JUAN MONTALVO, as Administrator of the Estate of MARIA S. MONTALVO, Deceased, Respondent, *v.* HAROLD A. MORALES, Defendant, and SMITH'S TRANSFER CORPORATION, Appellant.

LUCILA CINTRON, as Administratrix of the Estate of GLADYS CINTRON, Deceased, Respondent, *v.* SMITH'S TRANSFER CORPORATION, Appellant, et al., Defendant.

LUIS DUPREY et al., Respondents, *v.* HAROLD A. MORALES, Defendant, and SMITH'S TRANSFER CORPORATION, Appellant.

Second Department, February 11, 1963.

*Mendes & Mount* (*James G. Grady* of counsel), for appellant.

*Julius J. Ivanitsky* (*Benjamin H. Siff* on the brief), for Juan Montalvo, respondent.

*Philip Bareish* (*Benjamin H. Siff* on the brief), for Lucila Cintron, respondent.

*Pillinger, Raiskin & Weiser* (*Samuel M. Raiskin* of counsel), for Luis Duprey and others, respondents.

HOPKINS, J. At about 2:00 A.M. on May 9, 1959, at the highway intersection of Ward Avenue and Route 130 in Bordentown, New Jersey, an automobile owned and operated by defendant Harold Morales was struck by a trailer-truck owned by defendant Smith's Transfer Corporation of Staunton, Virginia (hereafter called Smith) and operated by its employee, Roy Simmons. The collision caused the deaths of two women, Gladys Cintron and Maria Montalvo, who were front-seat passengers in Morales' car. In addition, the collision caused minor injuries to three rear-seat male passengers, Luis Duprey, Joaquin Ajeitos and Justino Martinez, whose personal-injury action was consolidated for trial with the wrongful-death actions commenced by the personal representatives of the deceased women. Although a judgment was entered against both Morales and Smith, only Smith has appealed. Smith does not question the sufficiency of the evidence. It urges reversal on three grounds: (1) the erroneous exclusion of certain evidence; (2) alleged errors in the charge; and (3) the excessiveness of the jury's verdict for the several plaintiffs.

It appears that during its examination of a State trooper who had been directed to the scene of the collision, Smith unsuccessfully offered in evidence a record of Morales' conviction, after trial in a New Jersey Municipal Court, of violation of a New Jersey statute which regulates the yielding of the right of way at intersections (N. J. S. A. 39:4-90). The record was proffered as prima facie evidence, affecting every party to the action, of the fact that Morales had failed to yield the right of way to Smith.

In support of the trial court's exclusion of the certificate of Morales' conviction, plaintiffs rely upon *Walther* v. *News Syndicate Co.* (276 App. Div. 169; cf. *Ando* v. *Woodberry*, 8 N Y 2d 165 *). In support of its admissibility, Smith relies principally upon *Matter of Rechtschaffen* (278 N. Y. 336) and *Schindler* v. *Royal Ins. Co.* (258 N. Y. 310).

In *Schindler* (*supra*), plaintiff, the insured, sued to recover on a fire insurance policy for a fire loss. As a defense, defendant pleaded: (1) that the policy provided that it was to be void in the event the insured committed fraud concerning the subject of the insurance; (2) that the plaintiff had been convicted of the crime of presenting to the defendant a fraudulent proof of loss; and (3) that the judgment of conviction, therefore, barred the plaintiff's action. We struck out the defense and we certified the question of its sufficiency to the Court of Appeals (233 App. Div. 765, 849). That court held that, although the judgment of conviction was not effective to bar the action, proof of the conviction was admissible as prima facie evidence of the facts upon which it rested. Thus, *Schindler* involved the defensive use of a criminal conviction as proof against a convicted person who was seeking a money recovery upon the facts which underlay her conviction.

*Matter of Rechtschaffen* (278 N. Y. 336, 340, *supra*) concerned a Surrogate's Court proceeding by a nephew for his appointment as administrator of his aunt's estate. The deceased's husband filed a cross petition for his own appointment as administrator. The nephew answered that the husband had been guilty of abandonment and nonsupport of the deceased, and that the husband had thus forfeited his interest in the estate and his right to the appointment. Upon the hearing, the Surrogate struck from the record proof of judgments of the Domestic Relations Court and of the Magistrate's Court, which adjudged the husband to be a disorderly person on the ground that his

* In the *Ando* case (*supra*), the Court of Appeals passed only upon the admissibility of a guilty plea to a traffic offense but it left open the question now presented.

wife was then in danger of becoming a public charge, and which ordered him to pay certain sums for her support (Code Crim. Pro., § 899, subd. 1). The Court of Appeals held that it was error to strike out the proof of the judgments, because such proof, although it was insufficient as a matter of law to establish abandonment or failure to support, nevertheless constituted prima facie evidence of nonsupport.

Thus *Rechtschaffen*, as in *Schindler*, involved a defensive use of a judgment of conviction. In *Schindler*, the judgment was distinctly criminal; in *Rechtschaffen*, the judgments were quasi-criminal.

*Walther* v. *News Syndicate Co.* (276 App. Div. 169, *supra*) was an action to recover damages for wrongful death and for the conscious pain and suffering of a pedestrian who had been struck by a truck. It was held reversible error for the trial court to permit the plaintiff administrator therein to elicit on cross-examination of the truck driver that he had been convicted of the traffic infraction of dangerous driving in connection with the accident. As in the instant case, the driver's conviction followed a trial. Unlike the instant case, however, in which Morales was convicted of the violation of a traffic statute, the driver in *Walther* was convicted of the violation of an administrative regulation — a point which Smith presses, without explanation, as a substantial distinction between the *Walther* case and the case at bar.

If in *Walther* (*supra*) evidence of the truck driver's conviction for dangerous driving should have been excluded at Trial Term, it was necessary to distinguish *Schindler* and *Rechtschaffen* (*supra*). *Walther* attempted to do so by noting that in each of those cases " a record of conviction was held to be admissible against one affirmatively seeking to obtain an advantage or profit despite his own wrongdoing as shown by a judgment of conviction establishing the facts against him " (276 App. Div. 169, 173).

Plaintiffs herein adopt *Walther's* reasoning in thus distinguishing *Schindler* and *Rechtschaffen*. Smith, however, counters by recalling that in *Uzenski* v. *Fitzsimmons* (10 A D 2d 890) and in *Giessler* v. *Accurate Brass Co.* (271 App. Div. 980) we held that prior judgments of conviction might be introduced by the plaintiffs therein as part of their cases in chief. In *Uzenski* (*supra*) we held that, in an action to recover damages for assault, the defendant's criminal conviction of assault in the third degree was admissible, citing, *inter alia, Schindler* v. *Royal Ins. Co.* (*supra*). In *Giessler* (*supra*) we expressly rejected

*Walther's* analysis of *Schindler* and *Rechtschaffen*, and held that proof of defendant's criminal conviction for maintaining a nuisance would be admissible as prime facie evidence of the facts involved; and that, " to the extent that *Roach* v. *Yonkers Railroad Co.* (242 App. Div. 195) is in conflict with the *Rechtschaffen* case (*supra*), it must be deemed overruled." In *Roach* (*supra,* p. 197) we had held it was error to receive proof of a defendant's conviction of reckless driving as prima facie evidence of civil liability; and we distinguished *Schindler* on the ground that it rested upon the theory that " one may not profit by his own wrongdoing and may not maintain an action to which he must trace his title through his own breach of the law ".

We should follow a rule of exclusion with respect to proof of judgments of conviction for traffic offenses rendered after trial, regardless of whether such convictions involve the violation of administrative regulations, ordinances or statutes, since the source of the convictions lends nothing to the argument. We should do so with full recognition that we are dealing with an exception to the rule followed in *Schindler* and *Rechtschaffen* (see Prince, Evidence, 1960 Survey of N. Y. Law, 35 N. Y. U. L. Rev. 1590, 1591 [1960]). While the First Department ·in *Walther,* and while we ourselves in *Roach* (*supra*), took hold of a sound ethical distinction between the defensive use of evidence of criminal convictions and the offensive use of traffic convictions, that distinction is secondary to the real reason for our distrust of convictions rendered in traffic courts. *Walther* candidly stated that attitude in terms of " policy " (276 App. Div. 169, 175), as follows: " It is our experience that the receipt of proof of a defendant's conviction for a traffic infraction or violation of one or more of these regulations as evidence in chief to establish some element of a charge of negligence in a civil proceeding *is likely to impair the right of a defendant to a fair trial on the issue of civil negligence.*" (Emphasis added.)

Nor is the judicial attitude, as expressed in *Walther,* unique. The Uniform Rules of Evidence (rule 63, subd. 20), drafted by the National Conference of Commissioners on Uniform State Laws and approved by it and by the American Bar Association in 1953, provide that evidence of a final judgment adjudging a person guilty of a felony is admissible to prove any fact essential to sustain the judgment.[1]

---

1. New York, as *Rechtschaffen* demonstrates, is more liberal than the Uniform Rules in admitting evidence of judgments of conviction, since in that case a felony was not involved. *Semble*: *Uzenski* and *Giessler* (*supra*).

However, in their comment upon rule 63 (subd. 20) of the Uniform Rules of Evidence, the Commissioners stated: "Analytically a judgment of conviction is hearsay and is for that reason rejected by the majority of courts when offered to prove the defendant's guilt in another action in which the issue of guilt is material. Where a person has had an opportunity to defend himself and has entered a plea of nolo contendere or a plea of guilty or has been found guilty beyond a reasonable doubt, the judgment entered on the plea or verdict would seem to have sufficient value to be worth consideration by a trier of fact, and necessarily includes a finding of all facts essential to sustain the judgment in the case in which rendered. Despite the logic of this theory there is widespread opposition to opening the door to let in evidence of convictions particularly of traffic violations in actions which later develop over responsibility for damages. In other words, trials and convictions in traffic courts and possibly in misdemeanor cases generally, often do not have about them the tags of trustworthiness as they often are the result of expediency or compromise. To let in evidence of conviction of a traffic violation to prove negligence and responsibility in a civil case would seem to be going too far and for that reason this rule limits the admissibility of judgments of conviction under the hearsay exception to convictions of a felony. In this respect the rule is much narrower than Rule 521 of the Model Code of Evidence."

In *Schindler* (258 N. Y. 310, 313, *supra*) the Court of Appeals expressly recognized that proceedings against persons accused of crime were surrounded with procedural and substantive safeguards which commend the acceptance of the judgments of conviction which follow them. A similar observation can be made with respect to the judgments of conviction in *Rechtschaffen* (278 N. Y. 336, *supra*).

Convictions of traffic offenses, however, are in a different category. The proceedings in the traffic courts are almost universally regarded as *sui generis* (see *Sims* v. *Union News Co.*, 284 App. Div. 335, 339). To apply to them the evidentiary sanction which has been engrafted upon criminal and quasi-criminal proceedings — proceedings which are more solemn in their accusations and consequences — would be pressing logic beyond realities (see Netherton, Fair Trial in Traffic Court, 41 Minn. L. Rev. 577 [1957]; Richardson, Evidence [8th ed.], § 369; Fisch, New York Evidence, § 960; cf. Temporary Commission on the Courts of the State of New York, A Proposed Simplified State-Wide Court System, pp. 59–61 [1955]; Economos, Traffic

Court Procedure and Administration, American Bar Association, Standing Committee on the Traffic Court Program, pp. 2, 4, 67, 113, 137 [1961]; Warren, Traffic Courts, 1942, *passim*[2]). Thus treated, traffic court proceedings would undoubtedly become the first and perhaps the crucial stage in numerous negligence actions (Prince, Evidence, 1960 Survey of N. Y. Law, *supra*).

Lastly, the *Schindler* and *Rechtschaffen* cases are distinguishable from the case at bar. In those cases, the parties had the opportunity to participate in the previous criminal or quasi-criminal proceedings. In *Schindler*, the plaintiff and the defendant insurance company had confronted one another in the criminal court even though the insurance company was not a party to the prosecution. In *Rechtschaffen*, the decedent's husband and the decedent herself had participated in the Domestic Relations Court and Magistrate's Court proceedings. Here, the sole complainant in the New Jersey Municipal Court proceeding against Morales was a New Jersey State trooper. It does not appear that any of the living plaintiffs testified in that proceeding. And it is obvious that at Simmons' trial, no one could have testified on behalf of the two decedents — the passengers for whose death damages are sought. Nevertheless, as Smith frankly argues, in the case at bar the evidence of Morales' traffic conviction was offered to persuade the jury to hold only Morales liable because he (and not Simmons or Smith) had been convicted. Hence, we find no error in the exclusion of the record of Morales' traffic conviction.

However, we find that the verdict of $40,000 in favor of each of the personal representatives of the two decedents, Maria Montalvo and Gladys Cintron, is excessive. Since the wrongs occurred in New Jersey, we are governed by the law of that State in determining damages; and it is upon that theory that this case has been presented to us (cf. *Kilberg* v. *Northeast Airlines*, 9 N Y 2d 34; but, see, *Davenport* v. *Webb*, 11 N Y 2d 392). Under New Jersey law, while in a death action such as this the jury is free "to envision from the basic evidence the probabilities of the unknown future" its award cannot be "incommensurable" (*Capone* v. *Norton*, 21 N. J. Super. 6). In

2. Some States have enacted statutes which deny admissibility to evidence of a prior traffic conviction in a subsequent civil suit. (See, e.g., Colorado R. S. 1953, § 13-4-140; Minn. S., § 169.94, subds. 1, 2; Utah, C. A., § 41-6-170.) Cases construing these statutes have held that a plea of guilty to a traffic infraction, as well as a conviction after a plea of not guilty, should be excluded (*Ripple* v. *Brack*, 132 Col. 125; *Warren* v. *Marsh*, 215 Minn. 615; *Utah Farm Bureau Ins. Co.* v. *Chugg*, 6 Utah 2d 399).

our opinion, the evidence here of pecuniary loss suffered by the respective dependents of the two decedents did not justify the jury's awards with respect to them. Unless a new trial is to be had, such awards should be reduced to $20,000 with respect to each of the said decedents.

In computing damages, the funeral and medical expenses of each of the decedents should have been excluded as unrecoverable under the New Jersey Death Act (*Consolidated Traction Co.* v. *Hone,* 60 N. J. L. 444; *O'Brien* v. *New Jersey State Highway Dept.,* 11 N. J. Super. 548; cf. *Frasier* v. *Public Serv. Interstate Transp. Co.,* 244 F. 2d 668).

We have considered the other points raised and find no merit in them.

Judgment, insofar as it is against defendant Smith Corporation and in favor of the plaintiff Montalvo, should be reversed on the law and on the facts, and, as to said plaintiff, the action should be severed and a new trial should be granted as between him and the defendant Smith Corporation, with costs to abide the event, unless, within 30 days after entry of the order hereon, he shall stipulate to reduce to $20,000 the amount of the verdict in his favor as against said defendant and to the entry of an amended judgment accordingly, in which event the judgment as to said plaintiff against said defendant, as so reduced, should be affirmed, without costs.

Judgment, insofar as it is against defendant Smith Corporation and in favor of the plaintiff Lucila Cintron, should be reversed on the law and the facts, and, as to said plaintiff, the action should be severed and a new trial should be granted as between her and the defendant Smith Corporation, with costs to abide the event, unless, within 30 days after entry of the order hereon, she shall stipulate to reduce to $20,000 the amount of the verdict in her favor as against said defendant and to the entry of an amended judgment accordingly, in which event the judgment as to said plaintiff against said defendant, as so reduced, should be affirmed, without costs.

In the event that neither the plaintiff Montalvo nor the plaintiff Cintron should stipulate to reduce the verdict, then the actions of both shall remain consolidated and shall be retried together.

Judgment, insofar as it is against the defendant Smith Corporation and in favor of the plaintiffs Duprey, Ajeitos and Martinez, should be affirmed, with one bill of costs to said plaintiffs against defendant Smith Corporation.

UGHETTA, Acting P. J., CHRIST, BRENNAN and RABIN, JJ., concur.

28

Judgment, insofar as it is against defendant Smith Corporation and in favor of the plaintiff Montalvo, reversed on the law and on the facts, and, as to said plaintiff, the action is severed and a new trial granted as between him and the defendant Smith Corporation, with costs to abide the event, unless, within 30 days after entry of the order hereon, he shall stipulate to reduce to $20,000 the amount of the verdict in his favor as against said defendant and to the entry of an amended judgment accordingly, in which event the judgment as to said plaintiff against said defendant, as so reduced, is affirmed, without costs.

Judgment, insofar as it is against defendant Smith Corporation and in favor of the plaintiff Lucila Cintron, reversed on the law and on the facts, and, as to said plaintiff, the action is severed and a new trial granted as between her and the defendant Smith Corporation, with costs to abide the event, unless, within 30 days after entry of the order hereon, she shall stipulate to reduce to $20,000 the amount of the verdict in her favor as against said defendant and to the entry of an amended judgment accordingly, in which event the judgment as to said plaintiff against said defendant, as so reduced, is affirmed, without costs.

In the event that neither the plaintiff Montalvo nor the plaintiff Cintron should stipulate to reduce the verdict, then the actions of both shall remain consolidated and shall be retried together.

Judgment, insofar as it is against the defendant Smith Corporation and in favor of the plaintiffs Duprey, Ajeitos and Martinez, affirmed, with one bill of costs to said plaintiffs against defendant Smith Corporation.

