Fuchsberg, J.
(concurring in result). The real issue on this appeal is whether collateral estoppel, sometimes referred to as “issue preclusion” (Matter of American Ins. Co. [Messinger — Aetna Cas. & Sur. Co.], 43 NY2d 184,189, n 2), was properly applied against the defendant when the trial court prevented him from contesting the legality of a police officer’s entry onto his premises upon the ground that the question had previously been determined adversely to this defendant in another prosecution. Because I believe that the trial court’s ruling was correct, I would affirm on that ground.
Although collateral estoppel has its genesis in civil litigation, where it serves the public interest in an orderly termination of controversy when the issues at stake have been fully tried and necessarily adjudicated between the parties, its applicability to criminal prosecutions has long been recognized (see, e.g., Ashe v Swenson, 397 US 436,443; United States v Oppenheimer, 242 US 85, 87 [Holmes, J.]). In particular, the availability of resort to the doctrine in the context of a suppression motion can no longer be seriously disputed (United States ex rel. Di Giangiemo v Regan, 528 F2d 1262 [Friendly, J.], cert den 426 US 950; United States v McKim, 509 F2d 769, 775-776 [Wisdom, J.]; People v Hopkins, 52 Ill 2d 1 [Schaeffer, J.]; People v Gray, 393 Mich 1 [Kavanagh, J.] ; People v Scott, 93 Misc 2d 1074 [Eggert, J.] ; see, generally, Res Judicata — Criminal Cases, Ann., 9 ALR 3d 203, 241).
True, in the greater number of reported cases, the principle has been invoked at the behest of a defendant rather *68 than the People. For, as Judge Friendly took the pains to point out in the Di Giangiemo case, due process at times may bend over to favor the application of collateral estoppel on behalf of a defendant even in what otherwise might be regarded as uncertain circumstances. While the doctrine, therefore, is not to be applied against a defendant with the same rigor as against the State (cf. People v Berkowitz, 50 NY2d 333; People v Reisman, 29 NY2d 278, 285, cert den 405 US 1041), in appropriate circumstances most courts have found no difficulty in calling upon it when a defendant is to be estopped (Hernandez-Uribe v United States, 515 F2d 20, cert den 423 US 1057; United States v Colacurcio, 514 F2d 1 [Jameson, J.]; United States v Pena-Cabanillas, 394 F2d 785; United States v Rangel-Perez, 179 F Supp 619; see United States v Newman, 490 F2d 139; United States v Taylor, 437 F2d 371; cf. Allen v McCurry, 449 US 90).
Indeed, on suppression issues, collateral estoppel has come to be applied quite uniformly (United States v McNair, 439 F Supp 103, 106-109, affd 571 F2d 573, cert den 435 US 976; People v Hopkins, 52 Ill 2d 1, supra; People v Mann, 89 Mich App 511, 514; People v Scott, 93 Misc 2d 1074, supra). This is not surprising, since such motions generally present clean-cut questions of the admissibility of particular items of evidence. Surely, no matter how protective we must be of a defendant’s rights, “that the same item of evidence may be relevant in several trials * * * does not, without more, entitle him to repeated hearings as to [its] validity” (People v Hopkins, supra, at pp 3-4). Where there are different parties (People v Reisman, 29 NY2d 278, supra [prior ruling by out-of-State court]) or other valid reasons for denying an estoppel effect (see, e.g., Stone v Powell, 428 US 465; People v Payton, 51 NY2d 169), the result may be different. Here there is nothing to distinguish the suppression hearing from the run-of-the-mill.
Judicial suggestions that collateral estoppel not be applied against a defendant by and large have been in the form of dicta arising in the context of a determination of whether one charged with a crime has a constitutional right “to have the jury or the triers of the facts determine anew every ele *69 ment of guilt” (e.g., United States v Carlisi, 32 F Supp 479, 482). Whatever may be said for such statements or for others which bespeak concern with the ultimate fixing of guilt or innocence, especially by juries, who in “their projection of laymen’s sensitivities to facts” are sometimes thought to infuse an element of mercy dispensation in their verdicts (see People v Henderson, 41 NY2d 233, 236), the fact remains that Judges who preside at suppression hearings in the end do no more than pass upon the admissibility of evidence (see CPL 710.70, subd 3).
It, of course, is a requisite for preclusion that the issue decided be one finally resolved (cf. Matter of McGrath v Gold, 36 NY2d 406). Moreover, as in civil cases, “ [f] actors supporting a conclusion that a decision is final for this purpose are ‘that the parties were fully heard, that the court supported its decision with a reasoned opinion [and], that the decision was subject to appeal or was in fact reviewed on appeal’ ” (United States ex rel. Di Giangiemo v Regan, 528 F2d 1262, 1265, supra, quoting Restatement, Judgments 2d [Tent Draft No. 1], § 41, at p 7).
These tests were met in the present case. As the majority notes, the September 26 observations of Detective Waltman formed the predicate for both the Kings County and Nassau County warrants, the validity of each of which, in turn, depended upon whether the officer’s entry into the defendant’s room on that date was proper (see, e.g., People v Baldwin, 25 NY2d 66, 70). This issue was fully litigated at the earlier suppression hearing in the Kings County murder prosecution and there resolved against the defendant. The Appellate Division and a Judge of this court necessarily reviewed that determination on appeal from the judgment of conviction, at which point it became “procedurally final” (CPL 710.70, subd 2; 470.15).
Now, there is no good reason why the effect of this adjudication should be any less binding for purposes of collateral estoppel simply because the defendant chose not to testify at the hearing. The Supreme Court has recently reaffirmed the rule of Simmons v United States (390 US 377) “that testimony given * * * in support of a motion to sup *70 press cannot be admitted as evidence of his guilt at trial” (United States v Salvucci, 448 US 83, 88). While that “Court has not decided whether Simmons precludes the use of a defendant’s testimony at a suppression hearing to impeach his testimony at trial” (id., at pp 93-94), the ultimate resolution of that issue is irrelevant since it is clear that no one has a vested interest in perjured testimony (see, e.g., United States v Havens, 446 US 620; United States v Kahan, 415 US 239; People v Wise, 46 NY2d 321).
Moreover, it is hard to believe that testimony on the issue of “consent” would have caused the defendant to reveal “the nature of his case at preliminary proceedings”, as the majority puts it (at p 66). While this can hold true of a confession, where the issue of voluntariness may be relitigated at trial, it does not follow that this reasoning would apply to physical evidence, the suppression of which will be binding on a defendant at trial (CPL 710.70, subd 3; see People v Matera, 45 Misc 2d 864; People v Estrada, 44 Misc 2d 452, revd 28 AD2d 681, affd 23 NY2d 719, cert den 394 US 953).
In any event, the trial strategy the defendant resorted to in maintaining his silence at the hearing, whether elevated to a point where it deserves to characterize “the nature of the case” or not, is subject to no constitutional protection (see Williams v Florida, 399 US 78; People v Copicotto, 50 NY2d 222; Matter of Lee v County Ct. of Erie County, 27 NY2d 432, cert den 404 US 823). Given the automatic life sentence that would follow a conviction for murder (Penal Law, §§ 125.25, 70.00, subds 2, 3) it would defy elementary human psychology to suggest that there is “no incentive” to testify at a pretrial suppression hearing (compare Ando v Woodberry, 8 NY2d 165, with Montalvo v Morales, 18 AD2d 20 [traffic infractions]; see Restatement, Judgments 2d [Tent Draft No. 4], § 68.1, subd [e], par [iii]).
Accordingly, I would affirm the order of the Appellate Division upon the ground that the invocation of collateral estoppel against the defendant did not deprive him of any constitutional or statutory rights.
Chief Judge Cooke and Judges Gabrielli, Jones and *71 Meyer concur with Judge Wachtler; Judge Fuchsberg concurs in result in a separate opinion in which Judge Jasen concurs.
Order affirmed.