(No. 74482.—

HUGO THURMOND *et al.*, Appellees, v. AMBROSE MONROE, Indiv. and as Agent of Schwerman Trucking Company, *et al.*, Appellants.

*Opinion filed May 19, 1994.*

Mary Jo Connelly, of Sweeney & Riman, Ltd., of Chicago, for appellants.

Ronald M. Gonsky, Ltd., and Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London (Alvin R. Becker, David C. Thomas and Timothy M. Kelly, of counsel), all of Chicago, for appellees.

242

Sharon A. Salinas, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE NICKELS delivered the opinion of the court:

Plaintiffs, Hugo Thurmond (Hugo) and his wife Barbara Thurmond (Barbara), brought a negligence action in the circuit court of Cook County. Their action arises out of an automobile collision between Hugo and defendant Ambrose Monroe as Hugo and Monroe were traveling in opposite directions on a two-lane highway on September 19, 1981. At the time of the collision, Monroe was driving a tractor-trailer truck on behalf of defendant Schwerman Trucking Company. At trial, plaintiffs alleged that Monroe caused the accident by crossing the center line of the highway, while defendants alleged that Hugo crossed the center line. After trial, the jury returned verdicts in favor of plaintiffs. The appellate court affirmed (235 Ill. App. 3d 281), and we granted defendants' petition for leave to appeal (134 Ill. 2d R. 315). We affirm.

On February 23, 1982, Hugo appeared in traffic court on a traffic citation for improper lane usage (Ill. Rev. Stat. 1989, ch. 95½, par. 11—709(a)) in connection with the collision. In the traffic court proceeding, Hugo was represented by counsel and pleaded not guilty. The traffic court heard testimony from Monroe, Hugo, and Denis Rauch, the investigating police officer. The court then convicted Hugo and fined him $25 plus costs.

The civil trial commenced on March 13, 1990. Prior to trial, plaintiffs filed a motion *in limine* to exclude the traffic court conviction. At the same time, defendants moved for partial summary judgment based on the traffic court conviction. After a hearing, the trial court granted plaintiffs' motion *in limine* and denied defendants' motion for partial summary judgment. Plaintiffs also filed a motion *in limine* to exclude Officer Rauch's

opinion testimony regarding the point of impact of the vehicles. The trial court granted this motion after a hearing.

During the civil trial, Hugo testified that he stopped at a tavern after work and had two beers on the night before the collision. After leaving the tavern, he went home and went to sleep around 9:30 p.m. Hugo awoke at about 1:30 a.m. and left his home in Chicago to go hunting in Savanna, Illinois. At approximately 5 a.m., Hugo was driving his Chevy Blazer westbound on Route 64, near its intersection with Chana Road, when he saw Monroe's tractor-trailer approaching from the opposite direction. According to Hugo, one of Monroe's headlights then crossed over into Hugo's lane. Hugo honked his horn and raised one hand in front of his face and eyes. He stated that he next remembers waking up in a hospital.

Plaintiffs also read the evidence depositions of Dr. Srivastava and Dr. Bartucci into the record in the presence of the jury. Both physicians testified about the nature of Hugo's injuries. In addition, Dr. Srivastava testified that he treated Hugo shortly after the collision and that Hugo's blood-alcohol level was 0.10. Dr. Srivastava then stated that this level may have impaired Hugo's judgment at the time of the collision.

Defendant Monroe testified that he left his worksite in Dixon, Illinois, at 4:30 a.m. in an 18-wheel tractor-trailer truck to deliver cement to Franklin Park. Monroe stated that he inspected the tractor-trailer before leaving the worksite to make certain it was operating properly. Monroe then testified that he was traveling eastbound on Route 64 near Chana Road at around 5 a.m. Monroe claimed that he saw Hugo's headlights cross into his lane and that he applied his brakes and steered toward the right hand shoulder of his lane. As he was steering onto the shoulder, he collided head-on with Hugo's vehicle.

Officer Rauch of the Ogle County sheriff's department testified next. At the time of the accident, Rauch had worked for the sheriff's department for just over a year. Rauch testified that he had taken a law enforcement course, which included the investigation of traffic collisions, as part of his police training. Before September 19, 1981, Rauch had investigated about 15 to 20 accidents.

Initially, Rauch stated that he had no independent recollection of the collision but had prepared a police report. In addition, Rauch had asked a photographer to take several pictures of the scene. After consulting the report, Rauch testified that he arrived at the scene of the collision at 4:54 a.m. He stated that Hugo's automobile was in the westbound lane of Route 64, and the tractor-trailer was lying in a ditch next to the eastbound lane. Rauch investigated the collision for approximately eight to nine hours, during which time he examined skid marks, debris, fluid, damage to the highway, and the placement of the vehicles. Rauch testified that he observed debris, fluid, and oil in Monroe's lane but did not see any skid marks or damage to the highway in Hugo's lane.

On cross-examination, Rauch acknowledged that his testimony regarding the resting place of Hugo's vehicle differed from its location in his diagram. In addition, Rauch stated that there was fluid, oil, and debris on both sides of the highway. Rauch also conceded that he failed to record the location of certain skid marks in his police report. A photograph showed these skid marks to be located in Hugo's lane. Finally, Rauch acknowledged that he improperly identified a utility pole in the police report.

After closing argument, the jury returned a verdict of $319,642 in favor of Hugo, reduced by 16.5% for Hugo's comparative negligence to $266,901. It also returned

a verdict of $5,000 in favor of Barbara for her loss of consortium. Defendants raise three issues on review:

(1) whether the trial court erred in excluding Hugo's traffic conviction as evidence that Hugo crossed the center line;

(2) whether the trial court erred in denying defendants' motion for partial summary judgment based on the doctrine of collateral estoppel; and

(3) whether the trial court erred in excluding Officer Rauch's opinion testimony as to the point of impact of the vehicles.

## I. Admissibility of Hugo's Traffic Conviction

Defendants first argue that the trial court improperly granted plaintiffs' motion to exclude Hugo's traffic conviction. The conviction, following a plea of not guilty, arose from the same incident that now serves as the basis for this civil suit. Defendants argue that the conviction should have been admitted as evidence that Hugo crossed the center line, relying on *Thornton v. Paul* (1978), 74 Ill. 2d 132.

In *Thornton*, this court held that a criminal conviction may be admissible in a later civil trial as proof of the facts on which the conviction is based. Specifically, this court found that a conviction for battery was admissible in a subsequent civil trial to show that the convicted party acted intentionally and was therefore not covered by his insurance policy. In *Thornton*, the defendant was charged with a felony, convicted of a serious misdemeanor punishable by imprisonment, and represented by counsel at the criminal trial.

Defendants argue that we should now extend the holding of *Thornton* to allow the admission of a traffic conviction at a subsequent civil trial. We decline. We hold instead that traffic convictions are not admissible in later civil proceedings as proof of the facts that act as a basis for the conviction. This case does not involve the admissibility of a guilty plea, and we do not address

that issue. See generally M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 802.4, at 598-600 (5th ed. 1990).

Our holding is supported by authority in the majority of jurisdictions. Several jurisdictions have used case law to exclude a traffic conviction in a related civil action. (See, *e.g.*, *Hunter v. Hardnett* (1991), 199 Ga. App. 443, 405 S.E.2d 286; *Montalvo v. Morales* (1963), 18 A.D.2d 20, 239 N.Y.S.2d 72; *Loughner v. Schmelzer* (1966), 421 Pa. 283, 218 A.2d 768.) Other jurisdictions have adopted a statutory rule based on the Federal Rules of Evidence. (See Fed. R. Evid. 803(22); see also Unif. R. Evid. 803(22) (West 1986).) Federal Rule 803(22) provides that a conviction is admissible only if the underlying crime is punishable by imprisonment for more than one year. (Fed. R. Evid. 803(22).) This rule would prohibit the use of most traffic convictions. We note also that our appellate court has been unwilling to admit traffic convictions. See *Hengels v. Gilski* (1984), 127 Ill. App. 3d 894; *Nunley v. Mares* (1983), 114 Ill. App. 3d 779; *Smith v. Andrews* (1964), 54 Ill. App. 2d 51.

Defendants argue that the judge in a civil action should examine the traffic court proceeding to determine whether the convicted party defended himself vigorously. In this case, Hugo traveled from his home in Cook County to the traffic court in Ogle County and was represented by an attorney in traffic court. Therefore, defendants contend, Hugo defended himself vigorously, and the conviction should be admitted.

We disagree. Initially, we note that defendants' approach would penalize individuals who believe in their innocence and exercise their right to defend themselves. Hugo should not be penalized for hiring an attorney to represent him in traffic court. In addition, defendants' approach would require that every traffic proceeding be reexamined to determine if a traffic conviction exists and if it might be admissible.

Ultimately, the danger of unfair prejudice from a traffic conviction outweighs its probative value. (*People v. DeHoyos* (1976), 64 Ill. 2d 128, 132.) A conviction conveys a deceptive sense of certainty to the jury in a civil case that is difficult to challenge. "[J]uries may have difficulty grasping the distinction between a prior judgment offered as evidence and one that is conclusive, giving the judgment binding effect even if this is contrary to substantive law." (2 J. Strong, McCormick on Evidence § 298, at 297 (4th ed. 1992).) The jury in a civil action may substitute the opinion of the police officer who issued the ticket or the opinion of the traffic judge for its own. (*Ruthardt v. Tennant* (1968), 252 La. 1041, 1047-48, 215 So. 2d 805, 808.) Traffic court may therefore become "the cornerstone of a significant civil action filed after the conclusion of the criminal proceedings." *Hengels*, 127 Ill. App. 3d at 910; see also *Montalvo*, 18 A.D.2d at 25-26, 239 N.Y.S.2d at 77.

Defendants argue that excluding the conviction deprives the jury of all the relevant facts. We disagree. The witnesses and evidence presented in the traffic proceeding are generally available at the civil trial. Procedural safeguards, such as discovery, allow the parties to present the evidence more fully at the civil trial. Discovery is not available to most traffic court defendants. (134 Ill. 2d R. 411.) The traffic conviction therefore provides no extra information to a jury in a civil case. For these reasons, we find that the trial court acted properly in excluding the conviction.

## II. Collateral Estoppel

Defendants next contend that the trial court erred in failing to apply the doctrine of collateral estoppel. Defendants argue that the issue of which party crossed the center line was first decided by the traffic court. According to defendants, the trial court should not have allowed plaintiffs to relitigate the issue in the civil suit. We disagree.

A court applies collateral estoppel when an issue "has been fairly and completely resolved in a prior proceeding." (*In re Nau* (1992), 153 Ill. 2d 406, 424.) The traffic and civil proceedings involved very different inquiries. The only issue before the traffic court was whether Hugo committed a statutory violation. It did not determine how the violation and the collision were related, whether Monroe himself crossed the center line, whether Hugo or Monroe ultimately caused the collision, or whether Hugo's conduct even constituted negligence. These issues were important in the civil proceeding, and the jury concluded that both parties were at fault. In addition, we note that applying collateral estoppel would make traffic court an integral part of a civil action and might have a substantial impact on traffic court proceedings. For these reasons, we find that the trial court properly denied the motion for summary judgment based on collateral estoppel.

### III. Officer Rauch's Opinion Testimony

Defendants' final contention is that the trial court erred in excluding Officer Rauch's opinion testimony as to the point of impact of the vehicles. The trial court excluded this testimony because it found that Rauch did not qualify as an expert who could render an opinion on the point of impact. The court also found that the proposed testimony was accident reconstruction testimony and was not appropriate in this instance. We find that the trial court did not abuse its discretion in finding Rauch unqualified. We therefore do not address the accident reconstruction issue.

A reviewing court will give a trial court broad discretion in deciding whether an individual qualifies as an expert. (*Hardware State Bank v. Cotner* (1973), 55 Ill. 2d 240, 250-51.) It will reverse the trial court only if the trial court has abused its discretion. (See, *e.g.*, *Cleveringa v. J.I. Case Co.* (1992), 230 Ill. App. 3d 831, 851.) At

the time of the collision, Rauch had been with the department for one year, he had investigated 15 to 20 cases, and his traffic investigation training was strictly limited to taking measurements and collecting material at the scene of the collision. The trial court found that this background did not qualify Rauch as an expert witness.

Defendants argue that the trial court should have considered the expertise Rauch developed after his investigation of the collision between Hugo and Monroe. According to defendants, Rauch had investigated over 3,000 collisions at the time of trial. Given that Rauch had no independent recollection of the investigation, though, there is no assurance that Rauch did, or even could, apply this after-developed expertise to this collision. At trial, Rauch relied entirely upon his report and a diagram prepared on the day of the collision. The record suggests that this report and diagram may not have been accurate. For these reasons, we cannot say that the trial court abused its discretion in finding Rauch unqualified as an expert witness and excluding his testimony as to the point of impact.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*