(No. 67040.—

*In re* CARROLL L. OWENS *et al.*, Attorneys, Respondents.

*Opinion filed December 6, 1988.*

MILLER, J., took no part.

Daniel Drake, of Springfield, for the Administrator of the Attorney Registration and Disciplinary Commission.

Robert B. Oxtoby, of Van Meter, Oxtoby & Funk, of Springfield, for respondent.

JUSTICE CUNNINGHAM delivered the opinion of the court:

This matter is before the court upon exceptions of respondents, Carroll L. Owens and Gerald Dee Owens, to the report of the Hearing Board, which was adopted by the Review Board, and which recommended a two-year suspension. Two members of the Review Board recommended that the matter be remanded for additional evidence.

On February 27, 1986, the Administrator of the Attorney Registration and Disciplinary Commission filed with the Hearing Board a two-count complaint based on a judgment against respondents in a civil fraud action entered on December 14, 1981.

Counts I and II of the complaint charge respondents with engaging in conduct involving dishonesty, fraud, deceit and misrepresentation in violation of Rule 1—102(a)(4) of the Code of Professional Responsibility (Code) (107 Ill. 2d R. 1—102(a)(4)); conduct that is preju-

dicial to the administration of justice in violation of Rule 1—102(a)(5) of the Code (107 Ill. 2d R. 1—102(a)(5)); entering into a business transaction with clients (Bert Beatty and John Beatty (hereafter Beatty brothers)) in which they and their clients have conflicting interests, without the clients' consent after full disclosure in violation of Rule 5—104(a) of the Code (107 Ill. 2d R. 5—104(a)); intentionally prejudicing or damaging their clients (Beatty brothers) during the course of the professional relationship in violation of Rule 7—101(a)(3) of the Code (107 Ill. 2d R. 7—101(a)(3)); knowingly making a false statement of fact in violation of Rule 7—102(a)(5) of the Code (107 Ill. 2d R. 7—102(a)(5)); and engaging in conduct that tends to bring the courts and the legal profession into disrepute and gives the appearance of impropriety.

Before the instant disciplinary action was filed, the Beatty brothers filed and obtained a judgment in a seven-count complaint in the circuit court of Franklin County. In that complaint, the Beatty brothers alleged that respondents had fraudulently breached a partnership agreement entered into on July 15, 1970, and had fraudulently breached their corresponding fiduciary duty to the Beatty brothers. The Beatty brothers alleged in part essentially the same conduct that gave rise to this disciplinary action. Applying a "clear and convincing evidence" standard of proof, the trial court found that the allegations of fraudulent breach of a fiduciary duty and fraudulent breach of a partnership agreement had been established. On September 1, 1981, the court awarded the Beatty brothers $2,000 in compensatory damages and assessed against each defendant $60,000 in punitive damages. The judgment became a final order and was subsequently satisfied by conveyance of an interest in a radio station.

The Administrator sought to rely on the factual findings in the above civil case. On June 6, 1987, the Administrator filed a motion for summary determination of major issues, pursuant to section 2—1005(d) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(d)). The motion requested that the Hearing Board enter an order stating that there are no genuine issues of fact due to the factual findings in the civil case. The Administrator filed with the motion certified copies of the jury verdict (which the trial court considered advisory due to the equity nature of the case), the special interrogatories submitted to the jury, the jury's answers, the findings of fact and conclusions by the court, and the judgment. The motion was premised on the assumption (developed in a memorandum of law accompanying the motion) that the doctrine of "estoppel by verdict" precluded respondents from relitigating the factual findings in the civil case. In moving for summary judgment, the Administrator emphasized that the burden of proof in a civil fraud action is the same as in a disciplinary action: clear and convincing evidence. The motion was granted, and respondents were allowed to present evidence (including limited evidence regarding the underlying facts) *only* in extenuation and mitigation.

Because the underlying facts upon which disciplinable actions were found to have occurred were not litigated in this action, we herein summarize the factual findings in the civil proceeding involving the same conduct, factual findings as to which collateral estoppel was applied.

On July 15, 1970, Bert and John Beatty (Beatty brothers) and respondents (Owens brothers) entered into a written partnership agreement, for the stated purpose of operating a radio station in Benton. The Beatty brothers were to provide technical and financial support to the partnership, and respondents agreed to provide legal services to the partnership. As part of this agreement,

respondents applied for and eventually received a Federal Communications Commission (FCC) broadcasting license for an FM station.

In August 1970, respondents filed the first application for an FCC license, and attached thereto was a copy of the original partnership agreement of July 15, 1970.

In July 1971, the FCC denied this application. In November 1971, respondents filed another application with the FCC on behalf of the partnership. From November 1971 to October 19, 1972, respondents communicated with the FCC concerning amendments to the second application (November 1971). During this period of time the Beatty brothers never told respondents that they intended to withdraw from the partnership, nor did the Beatty brothers take any action to withdraw from the partnership.

On October 19, 1972, respondent Carroll L. Owens sent a letter to the FCC stating that the Beatty brothers were withdrawing from the partnership. Respondent Gerald Dee Owens was aware of this letter.

On January 1, 1973, respondents entered into a new partnership agreement that did not include the Beatty brothers. The new partnership agreement was substantially the same as the original agreement, and even adopted the original partnership name. Respondents did not disclose the existence of this new partnership to the Beatty brothers.

On March 19, 1973, respondents filed amendments to the second application (November 1971) and attached a copy of the new partnership agreement. In April 1973, the FCC approved the March 19, 1973, amended application and issued a license to the new partnership to operate an FM station in Benton. Shortly thereafter, respondents, doing business as Rend Lake Broadcasting Company, began broadcasting under the call letters WQRX.

Based upon these facts as found in the civil proceeding, the Hearing Board concluded that respondents had engaged in all of the misconduct alleged in the complaint, except for the allegation that their conduct was prejudicial to the administration of justice. Before recommending the two-year suspensions, however, the Hearing Board heard some evidence in mitigation. Several witnesses testified as to the character of respondents, and each respondent testified regarding his length of practice and that he had never previously been accused of professional misconduct. The Administrator offered no evidence in aggravation.

The threshold question to be considered is whether respondents can be precluded from relitigating facts resolved adversely to them in a prior civil proceeding with another party under the general law of collateral estoppel. Specifically, we must determine whether the Administrator, who was not a party to a prior judgment, may nevertheless use that judgment "offensively" to prevent respondents from relitigating the issue involved in the Beatty brothers' case. Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from litigating an issue the defendant has previously litigated unsuccessfully in another action. Defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost.

On several occasions many years ago, this court stated essentially that offensive use of collateral estoppel was to be treated in the same manner as defensive use of collateral estoppel. In *Charles E. Harding Co. v. Harding* (1933), 352 Ill. 417, this court stated, in reference to collateral estoppel:

> "This principle is sometimes called estoppel by verdict, and the estoppel is equally available to either party, the plaintiff in support of his action or the defendant of his

defense, when the circumstances warrant it." 352 Ill. at 427.

See also *Louisville, New Albany & Chicago Ry. Co. v. Carson* (1897), 169 Ill. 247.

More recently, however, a substantial change has occurred in the application of collateral estoppel: elimination of the mutuality requirement. Under the mutuality doctrine, neither party could use a prior factual finding as an estoppel against the other unless both parties were bound by the judgment. (See *In re Hutul* (1973), 54 Ill. 2d 209.) The mutuality requirement was removed in *Illinois State Chamber of Commerce v. Pollution Control Board* (1979), 78 Ill. 2d 1, 7. This change has broadened the use of collateral estoppel considerably, and has also called into question the prudence of allowing collateral estoppel to be used *offensively* as readily as it is used *defensively*.

As the United States Supreme Court has noted, offensive use of collateral estoppel does not always foster judicial economy and fairness in the way that defensive use of collateral estoppel typically does. Defensive use of collateral estoppel precludes a plaintiff from relitigating issues by switching adversaries, and thus gives a plaintiff an incentive to try and join all defendants in the first action. By contrast, offensive use of collateral estoppel creates the opposite incentive. As stated by the United States Supreme Court:

> "Since a plaintiff will be able to rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins, the plaintiff has every incentive to adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment. [Citations.] Thus offensive use of collateral estoppel will likely increase rather than decrease the total amount of litigation, since potential plaintiffs will have everything to gain and nothing to lose by not intervening in the first action." (*Parklane Hosiery Co. v.*

*Shore* (1979), 439 U.S. 322, 330, 58 L. Ed. 2d 552, 561, 99 S. Ct. 645, 651.)

Although this consideration does not directly apply to this disciplinary case, it cautions against the unrestricted use of offensive collateral estoppel generally.

A second argument against the unrestrained offensive use of collateral estoppel is one of fairness. If a defendant in an initial action is sued for relatively minimal damages and has no reason to foresee future suits involving the same subject matter, he may have little incentive to vigorously litigate the suit. This places him in a difficult predicament if a later suit occurs and involves potential liability infinitely larger than that involved in the first suit. Also, as pointed out in *Parklane Hosiery*, allowing offensive collateral estoppel may be unfair to a defendant if the judgment relied upon as a basis for collateral estoppel is itself inconsistent with one or more previous judgments in favor of the defendant, or if the second action affords the defendant procedural opportunities unavailable in the first action, opportunities that could readily cause a difference in the result obtained. *Parklane Hosiery*, 439 U.S. at 330, 58 L. Ed. 2d at 561, 99 S. Ct. at 651.

The above considerations indicate to us that courts must be more cautious in allowing collateral estoppel to be used offensively than in allowing it to be used defensively. In our view, in ordinary civil cases, circuit courts must have broad discretion to ensure that application of offensive collateral estoppel is not fundamentally unfair to the defendant, even though the threshold requirements for collateral estoppel are otherwise satisfied. The threshold requirements, as set forth in *Illinois State Chamber of Commerce v. Pollution Control Board* (1979), 78 Ill. 2d 1, 7, are: (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on

the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication.

We turn now to the specific question whether factual findings based on "clear and convincing evidence" in an ordinary civil case may form a basis for collateral estoppel in a disciplinary action. The Administrator emphasizes that, in accordance with *In re Scott* (1983), 98 Ill. 2d 9, 16, an attorney's conviction of a crime involving moral turpitude is conclusive evidence of guilt and is grounds for imposing discipline. (See *In re Callas* (1980), 82 Ill. 2d 6, 14; 107 Ill. 2d R. 761.) The Administrator argues that for collateral estoppel purposes in a disciplinary case, a civil adjudication of fraud is analogous since "the standard of proof in those proceedings is equal or greater than the standard of proof required in Illinois attorney discipline proceedings." Accordingly, in the Administrator's view, there is no reason to preclude giving collateral estoppel effect in the instant case to the factual questions previously decided.

Although this court necessarily relies upon the assistance of the Hearing and Review Boards in enforcing the Code, it is the responsibility of this court to determine what conduct is disciplinable and to determine the severity of discipline in a particular case. This ultimate responsibility never shifts, and it is not without hesitation that this court will relegate the fact-finding function to proceedings outside of formal disciplinary proceedings. With regard to proceedings for crimes involving moral turpitude, there is ample justification for doing so, for several reasons. First, the burden of proof in such cases is extremely high, higher than is the burden of proof in a disciplinary proceeding. Second, although both a civil fraud action and a criminal charge involving moral turpitude are serious, the gravity of such a criminal charge, both in terms of damage to one's reputation and threat

to one's liberty and livelihood, is on a level which simply cannot meaningfully be compared to a civil proceeding. For these reasons, this court can be better assured that an attorney who has been found guilty of a criminal offense involving moral turpitude has been so found only after he has made every reasonable effort to cast doubt on his guilt, and thus this court can more confidently rely on a criminal conviction as resting on accurate factual findings.

We will not, however, go beyond permitting the conclusive use of a criminal conviction and begin giving offensive collateral estoppel effect in a disciplinary proceeding to factual findings in a civil fraud action. The risk of unfairly imposed discipline is too great, and the economy to be gained too minimal, to warrant such an abridgement of the disciplinary process.

For the foregoing reasons, respondents are certainly entitled to an evidentiary hearing on the underlying facts of the complaint. They are not, however, presently entitled to have the complaint dismissed. There is a suggestion in respondents' brief that they should be discharged because these proceedings have been protracted over many years.

The records in this proceeding indicate that the civil action was filed on September 24, 1973, and a final judgment was entered on December 14, 1981. The Administrator did not file a complaint with the Hearing Board until February 27, 1986. However, there is no statute of limitations applicable to a disciplinary proceeding such as this, and this court will not refuse to entertain charges simply because of the passage of some period of time.

Respondents' alleged conduct is reprehensible. Here, there is no prejudice to respondents shown by the record and there are no specific allegations of prejudice made because of the delays in bringing the proceedings or in the proceeding itself. Staleness is not a bar in this cir-

cumstance. *In re Bossov* (1975), 60 Ill. 2d 439, 447; *In re Anderson* (1939), 370 Ill. 515; *People ex rel. Healy v. Hooper* (1905), 218 Ill. 313.

By this opinion, we in no way intend to alter disposition of reciprocal disciplinary matters brought pursuant to Supreme Court Rule 763 (107 Ill. 2d R. 763).

It is hereby ordered that this matter be remanded to the Hearing Board to proceed as indicated in this opinion.

*Cause remanded.*

JUSTICE MILLER took no part in the consideration or decision of this case.