Docket No. 81459–Agenda 17–March 1997.

ERNIE TALARICO, JR., Appellee, v. FRANK E. DUNLAP, M.D., 
et al
., Appellants.

Opinion filed September 11, 1997.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

The issue presented in this appeal is whether defensive collateral estoppel may be utilized by the defendant in this civil case to bar litigation of an issue which was decided adversely to the plaintiff in the plaintiff's prior criminal proceeding.

FACTUAL AND PROCEDURAL BACKGROUND

In 1986 Ernie Talarico was a second-year medical student at the Chicago College of Osteopathic Medicine. Talarico suffered from severe acne for many years. As a result of his acne, Talarico avoided social situations, became depressed, and was embarrassed and extremely uncomfortable in clinical work situations where he and his fellow students had to “work on each other.” In June of 1986, Talarico sought medical treatment for his acne condition from Dr. Frank Dunlap at Dixie-Ashland Dermatology Associates, Ltd. Dunlap prescribed Accutane, which had some side effects, for the condition. Talarico used the Accutane from June 6, 1986, until September 1986.

On August 21, 1986, Talarico visited a forest preserve, grabbed a 15-year-old male, pushed him to the ground, and shocked him with a stun gun. Later, on August 27, 1986, Talarico again visited a forest preserve where he stunned a 25-year-old man with a stun gun. Talarico and the man fell to the ground; Talarico grabbed the man's genitals and kissed him several times on the face. Up until these occurrences, Talarico had no involvement with the criminal justice system.

Subsequent to these occurrences, Talarico was arrested and charged with aggravated battery, aggravated unlawful restraint, armed violence and aggravated criminal sexual abuse. At the criminal proceeding, Talarico entered into a plea agreement whereby he pleaded guilty to two counts of misdemeanor battery. Talarico stipulated to the facts concerning his crimes. Further, he admitted to having committed the crimes “intentionally and knowingly, without legal justification.”

After proper admonishment pursuant to Supreme Court Rule 402 (134 Ill. 2d R. 402), the court accepted defendant's plea. In exchange for his plea, Talarico was sentenced to one-year misdemeanor probation, ordered to undergo psychiatric counseling and assessed fees.

Some time following the completion of the criminal proceedings, Talarico received a pardon from the Governor. The pardon provided that Talarico was “acquitted and discharged of and from all further imprisonment and restored to all the rights of citizenship which might have been forfeited by the conviction.”

Talarico subsequently filed a four-count, first-amended civil complaint in the circuit court of Cook County. The first three counts of the complaint were lodged against Roche Laboratories, the manufacturer of Accutane, and the remaining one count was lodged against Dr. Dunlap, the prescribing physician, and Dixie-Ashland Dermatology Associates, Ltd. Roche Laboratories entered into a settlement agreement with Talarico. As a result of the settlement, the first three counts of the complaint were dismissed with prejudice.

The remaining one count against Dr. Dunlap and Dixie-Ashland (collectively, Dunlap) alleged that Dr. Dunlap prescribed medication with known side effects and subjected Talarico to unnecessary risk. Further, the complaint alleged that Dr. Dunlap failed to properly monitor Talarico's condition. The complaint alleged that, as a result of these failings, Talarico was injured and “[t]hat in part those injuries included alleged criminal activity for which [Talarico] was charged.”

The complaint additionally alleged that the aforementioned injuries caused Talarico to “incur legal obligations for medical and related services, has caused him to lose profits and earnings which he otherwise would have made and acquired; has caused him to lose educational advantage which he would otherwise have acquired; has caused him to suffer pain and disability; all of which injuries and conditions are permanent.”

In answer to Talarico's complaint, Dunlap moved the court for summary judgment (735 ILCS 5/2–1005 (West 1994)) on the basis that Talarico's guilty plea in the criminal proceeding collaterally estopped him from claiming that Accutane proximately caused his criminal behavior. The court granted summary judgment in Dunlap's favor. Talarico stipulated that the court's ruling disposed of the entire case.

The appellate court reversed the order of summary judgment (281 Ill. App. 3d 662), and we granted Dunlap's petition for leave to appeal (155 Ill. 2d R. 315(a)). The Illinois Trial Lawyers Association was granted leave to file an 
amicus
 
curiae
 brief in support of Talarico. 155 Ill. 2d R. 345. For the reasons which follow, we now affirm the judgment of the appellate court.

DISCUSSION

This case comes to us on the appeal from a ruling on Dunlap's motion for summary judgment. Our review is, therefore, 
de
 
novo
. See 
Delaney v. McDonald's Corp.
, 158 Ill. 2d 465, 467 (1994), citing 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102 (1992).

Pardon

The parties concede that the Governor's pardon of defendant has no effect on the legal question presented in this appeal. They have advanced no argument on the issue. Further, the appellate court expressly noted that its decision was without regard to the pardon's effect. See 281 Ill. App. 3d at 668. As part of our review, nevertheless, we have briefly considered the pardon's nature and effect.

In that regard, we note the following. Some courts have held that a pardon not only relieves the punishment for the offense but blots out the existence of the guilt of the offender. 67A C.J.S. 
Pardon and Parole
 §18 (1978). This court, however, has held that a pardon merely releases an inmate from custody and supervision. 
People ex rel. Abner v. Kinney
, 30 Ill. 2d 201, 205 (1964). Since the very essence of a pardon is forgiveness or remission of penalty, assessed on the basis of the conviction of the offender, a pardon implies guilt; it does not obliterate the fact of the commission of the crime and the conviction thereof. 67A C.J.S. 
Pardon and Parole
 §18 (1978). In other words, a pardon “involves forgiveness but not forgetfulness.” 29 Ill. L. & Prac. 
Pardons
 §1, at 109 (1957); see also 
People v. Chiappa
, 53 Ill. App. 3d 639, 640 (1977). The law in Illinois, though slight, supports a conclusion that Talarico's pardon did not negate the fact of his criminal conviction for purposes of collateral estoppel.

Collateral Estoppel

Dunlap argues that Talarico should be collaterally estopped from “relitigating” in this civil suit the issue of the cause of his criminal conduct, which was decided in the prior criminal proceeding.

Collateral estoppel is an equitable doctrine. Application of the doctrine precludes a party from relitigating an issue decided in a prior proceeding. 
Herzog v. Lexington Township
, 167 Ill. 2d 288 (1995). Offensive use of collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from litigating an issue the defendant has previously litigated unsuccessfully in another action. Defensive use of the doctrine occurs when, as in this case, a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost. 
In re Owens
, 125 Ill. 2d 390, 397 (1988).

The minimum threshold requirements for the application of collateral estoppel, as set forth in 
Illinois State Chamber of
 
Commerce v. Pollution Control Board
, 78 Ill. 2d 1, 7 (1979), are: (1) the issued decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. A previous requirement of “identical-parties-mutuality” has been eliminated. See 
Illinois State Chamber of Commerce
, 78 Ill. 2d at 7.

For collateral estoppel to apply, a decision on the issue must have been necessary for the judgment in the first litigation, and the person to be bound must have actually litigated the issue in the first suit. A. Vestal, 
Issue Preclusion and Criminal
 Prosecutions
, 65 Iowa L. Rev. 281, 288-89 (1980). Even where the threshold elements of the doctrine are satisfied and an identical common issue is found to exist between a former and current lawsuit, collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped. 
Kessinger v. Grefco
, Inc.
, 173 Ill. 2d 447, 467-68 (1996); see also 
Van Milligan v. Board of Fire &
 Police Commissioners
, 158 Ill. 2d 85, 96 (1994).

In deciding whether the doctrine of collateral estoppel is applicable in a particular situation, a court must balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his case. 50 C.J.S. 
Judgments
 §779 (1997). In determining whether a party has had a full and fair opportunity to litigate an issue in a prior action, those elements which comprise the “ `practical realities of litigation' ” must be examined. 47 Am. Jur. 2d 
Judgments
 §651 (1995). In some circumstances the absence of an incentive to vigorously litigate in the former proceeding is relevant in the application of collateral estoppel. See 
Housing Authority for La Salle County v. Young Men's Christian Ass'n
, 101 Ill. 2d 246, 255 (1984); Restatement (Second) of Judgments §28(5)(c) (1982); see also 47 Am. Jur. 2d 
Judgments
 §651 (1995). There must have been the incentive and opportunity to litigate, so that a failure to litigate the issue is in fact a concession on that issue. A. Vestal, 
Issue Preclusion and Criminal Prosecutions
, 65 Iowa L. Rev. 281, 288-89 (1980).

Incentive to litigate might be absent, for instance, where the amount at stake in the first litigation was insignificant, or if the future litigation was not foreseeable. 47 Am. Jur. 2d 
Judgments
 §651 (1995). In the context of prior criminal proceedings, the seriousness of the allegations or the criminal charge at the prior hearing is a factor to be considered. If the offense charged is of a minor or trivial nature, defendant might not be sufficiently motivated to challenge the allegations made at trial and, in such a case, it might be unfair to allow collateral estoppel to be asserted later. However, even summary offenses, when they provide sufficient incentive and opportunity for a defense, may be the basis of collateral estoppel in a subsequent civil proceeding as, for instance, when they are part of another important charge. 50 C.J.S. 
Judgments
 §922 (1997).

The parties here do not question the propriety of applying collateral estoppel to bar relitigation in a civil case of an issue previously decided in a criminal proceeding. It is generally accepted that a criminal conviction collaterally estops a defendant from contesting in a subsequent civil proceeding the facts established and the issues decided in the criminal proceeding. See 50 C.J.S. 
Judgments
 §922 (1997).

 Further, the parties concede that the elements for collateral estoppel to apply have been satisfied. Concerning the identity-of-issues element of collateral estoppel specifically, Talarico admitted in the criminal proceeding that his criminal conduct was both knowing and intentional. The issue to be decided in the civil case is whether Accutane, instead, contributed to cause Talarico's criminal conduct. We agree that the 
mens
 
rea
 element supporting Talarico's battery conviction and the proximate cause element in the malpractice suit are the same issue. 
Cf
. 
Thurmond v. Monroe
, 159 Ill. 2d 240 (1994) (collateral estoppel not applied where prior traffic court proceeding determined only whether plaintiff violated a traffic statute and later civil proceeding determined who caused the resulting collision).

Where the parties differ is in their interpretation of the “incentive to litigate” exception to the collateral estoppel doctrine. Both parties rely on 
Bulfin v. Eli Lilly & Co.
, 244 Ill. App. 3d 785 (1993), as supportive of their respective positions.

The facts in 
Bulfin
 are somewhat similar to the facts in the case at bar. There, Bulfin was charged with one count of murder in the second degree and two counts of attempted murder. Bulfin entered an “
Alford
 plea,” whereby he consented to the entry of judgment without trial, declined to provide the trial court with any factual basis for the guilty plea, but maintained his innocence. 
Bulfin
, 244 Ill. App. 3d at 786-87. See 
North Carolina v. Alford
, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct.160 (1970). Pursuant to a plea negotiation, Bulfin's charges were reduced and he was given a sentence reflective of the reduction.

Subsequent to his criminal conviction, Bulfin filed a civil complaint against two drug manufacturers, a physician and a health maintenance organization. In his complaint, Bulfin charged that drugs marketed and prescribed to him by the named defendants induced his criminal conduct.

The civil complaint was dismissed based on the doctrine of collateral estoppel. On appeal, our appellate court first noted that in Arizona, where the criminal offenses occurred, a criminal defendant is statutorily precluded from subsequently denying in a civil proceeding the essential allegations of the criminal offense upon which he was previously adjudged guilty. Further, the court noted the “incentive to litigate” exception to collateral estoppel was not applicable. In so finding, the court reasoned that Bulfin's acceptance of the plea was not out of a lack of motivation to litigate: drug-induced conduct would have been a defense to the offenses charged. Rather, Bulfin had accepted the plea to substantially reduce his potential prison term.

Talarico asserts that given the terms of the plea agreement offered him, which substantially reduced the charged offenses to a misdemeanor and carried only a sentence of probation, medical treatment and payment of fees, he had no incentive to litigate. Therefore, consistent with 
Bulfin
, the exception should apply to defeat application of collateral estoppel.

Dunlap contends that Talarico misperceives 
Bulfin
. Dunlap asserts that the proper focus in the incentive-to-litigate inquiry is on the crimes with which the criminal defendant is originally charged and not the charges which result from plea negotiations. Therefore, when a individual is charged with a crime for which he may be sentenced to a substantial term in prison, incentive to litigate is necessarily established by the need to defend against the charge. Citing 
Bulfin
, Dunlap argues that “[i]t would be an anomaly to suggest that, when plaintiff abandoned his defense, he did so out of a lack of incentive as opposed to a desire to substantially reduce his potential prison term.” 
Bulfin
, 244 Ill. App. 3d at 791.

We reject the reasoning in 
Bulfin
 as it relates to negotiated guilty pleas and the incentive to litigate. Collateral estoppel is a flexible doctrine which defies rigid or mechanical application. The question of whether a party has had a full and fair opportunity to contest a prior determination cannot be reduced to a simple formula. 
Warren v. McCall
, 709 F.2d 1183, 1186 n.7 (7th Cir. 1983).

Ordinarily, when a fact has been admitted by a litigant, it is reasonable to presume that the fact is established and that the fact should not be subject to relitigation. We do not believe, however, that the same may be said in every case of a negotiated guilty plea.

Negotiated pleas serve an important administrative function in our criminal justice system. Such pleas, by design, dissuade litigation. A decision to accept a plea is often the result of weighing a myriad of factors, the reduction of the charge and resulting sentence being a significant but only one of those factors. Because in the case of negotiated pleas it does not necessarily follow that the failure to deny reflects only a defendant's desire to receive a reduced sentence, for collateral estoppel purposes consideration of more than the fact of the “admission” is required. See also 2 R. LaFave, Criminal Procedure §20.1, at 559-60 (1984).

“The `incentive to litigate' formula, as used in most of the cases and in the 
Restatement Second
, allows a party who 
did 
litigate an issue to relitigate if the party can show that the original litigation was a side show rather than a struggle to the finish.” (Emphasis in original.) G. Hazard, 
Revisiting the Second Restatement of
 
Judgments: Issue Preclusion and Related Problems
, 66 Cornell L. Rev. 564, 584 (1981). Under that approach, the party may rebut the inference naturally drawn from the fact that the issue was actually litigated, that is to say, the inference that the party had treated the issue with entire seriousness in the first litigation. See 66 Cornell L. Rev. at 584; see also Restatement (Second) of Judgments §28 (1982).

We believe that the Restatement offers the proper focus for the incentive-to-litigate inquiry. We therefore consider whether the inference which flows from Talarico's admission that his conduct was intentional and knowing was “treated with entire seriousness” or may now be rebutted. In so doing, we are mindful that the refusal to give Talarico's criminal judgment preclusive effect should not occur without a compelling showing of unfairness, nor should it be based on a conclusion that the criminal judgment was erroneous. Restatement (Second) of Judgments §28, Comment 
j
 (1982).

We have been provided with and have reviewed the record of proceedings in Talarico's criminal case. As a result of that review, we conclude that only in the most technical sense was Talarico's guilty plea an admission that his criminal conduct was knowing and intentional. The record makes apparent that the plea was a compromise: never is it conceded that Accutane was not the contributing factor to Talarico's criminal conduct. In fact, it appears that both the trial court and the State's Attorney were made aware of the use of the Accutane and Talarico's theory concerning its effects.

Specifically, in mitigation, defense counsel offered that prior to Talarico's taking Accutane, he had had no problems and no criminal background. He further commented that Accutane had been found to cause aggressive behavior. In response to the court's query as to whether the medication had been taken off of the market, defense counsel responded in the affirmative. In pronouncing sentence, the trial court commented that misdemeanor probation was an appropriate disposition in light of the “very strange circumstances involved” in the case. The court further noted that those circumstances had been “documented *** to the State's Attorney office.” Incidentally, Dunlap refuted the statement made at the criminal proceeding concerning Accutane having been taken off of the market.

Also telling on the incentive-to-litigate issue is the generousness of the plea offer. Talarico was originally charged with aggravated battery, aggravated unlawful restraint, armed violence, and aggravated criminal sexual abuse. A conviction for these offenses carried a substantial sentence. Apparently pursuant to the plea agreement, the two counts of aggravated battery were amended to charge only two counts of “simple battery,” and the remainder of the charged offenses were nol-prossed. The trial court, accepting the agreement, imposed a sentence of one-year misdemeanor probation, psychiatric counseling and fees. Significantly, at the time of the criminal proceedings, defense counsel offered that Talarico was a second-year medical student. Any term of imprisonment would have delayed his studies.

We note further that prior to the criminal proceedings, Dunlap wrote to the State's Attorney on behalf of Talarico. In that letter, Dunlap requested leniency for Talarico, whom he characterized as “intelligent, rational and of a very mild demeanor.” Dunlap stated with certainty that there were extenuating circumstances pertaining to the charges against Talarico; Dunlap stated that he would never characterize Talarico as either aggressive or dangerous.

Further, it appears that a subsequent civil suit against Dunlap was not, at the time of the criminal proceedings, foreseeable. In an affidavit filed by Talarico's criminal trial attorney, counsel averred that at the time he advised Talarico concerning the plea, counsel believed that Roche was the only party potentially liable for Talarico's violent behavior. Counsel stated that he had neither an indication nor a suspicion of any malpractice on the part of Dunlap.

Finally, although we have concluded that the pardon does not negate the finding of Talarico's guilt, it nonetheless merits favorable consideration as it relates to the inference to be drawn from his admission of guilt.

The above facts, 
i.e.
, the significant reduction in the charges and sentence, Talarico's status as a student, the unforseeability of future civil liability, consideration given by the trial court of the mitigation evidence, including the use of Accutane, as well as Dunlap's own statement to the State's Attorney regarding Talarico's demeanor, combine to rebut the inference that Talarico's admission on the issues of intent and knowledge was treated by him with entire seriousness. We believe that the incentive to litigate the criminal offense was not fully present here. Therefore, collateral estoppel should not apply.

Had the issue concerning Accutane and its side effects not been an issue in the criminal proceeding, it would perhaps merit less consideration here. However, the issue having been first raised in the criminal proceeding, it would be patently unfair to now disregard it as a factor having contributed to the circumstances and particulars of the plea offer and acceptance.

Incidentally, while in 
Bulfin
 criminal trial counsel averred that he and Bulfin had reason to believe that Bulfin's criminal conduct had been drug induced, we do not notice in 
Bulfin
 any indication that the issue of drug-induced conduct was a part of the plea negotiations or made known to the trial court.

As a final note on the incentive-to-litigate inquiry generally, we believe it would be unfair to create a situation in which a criminal defendant who, after balancing the costs and risks of trial, chooses to accept a plea negotiation is said to automatically forfeit his right to a civil trial. A refusal to look behind the curtain of the negotiated guilty plea is to require every criminal defendant with a potential civil suit to proceed with criminal trial, regardless of the risks. Moreover, to rigidly permit application of the collateral estoppel doctrine in cases involving negotiated pleas will have a chilling effect on the acceptance of such pleas. To do equity requires simply that every available fact surrounding a negotiated guilty plea be examined prior to permitting the preclusive effect of the doctrine to apply.

Dunlap further argues that it would be unfair to permit Talarico to reap the benefits which flowed from his negotiated guilty plea and to then be permitted to deny the validity of that plea. If in fact it is conclusively determined that the Accutane was the cause of Talarico's criminal conduct, and we make no determination in that regard, we do not perceive that Talarico has benefitted. Not to be forgotten are the facts that Talarico, although pardoned, suffers the burdens attendant to having a criminal record and has had to endure the costs, both financial and emotional, of defending against criminal charges.

Finally, Dunlap argues that to deny preclusive effect in this case would set bad public policy in Illinois. On the contrary, we believe that the doctrine of collateral estoppel remains intact and, as it should be, is used sparingly, on a case-by-case basis, and only when equity requires. 47 Am. Jur. 2d 
Judgments
 §651 (1995). Moreover, we notice no unfairness to Dunlap, who, heretofore, has not been subject to litigation involving the issue of the effect of Accutane on Talarico. On the contrary, if in fact Accutane caused Talarico's criminal conduct, any unfairness in precluding relitigation would have been borne solely by Talarico.

CONCLUSION

By our holding we do not establish a bright line rule with respect to plea negotiations in the context of collateral estoppel. Application of the doctrine must be determined on a case-by-case basis, after consideration of all of the available factors. We simply hold that, on the particular facts of this case, Talarico had no incentive to litigate the criminal charges against him. That being the case, to bar Talarico's civil suit against Dunlap would deprive Talarico of his day in court and unfairly advantage Dunlap. Therefore, for all of the foregoing reasons, we affirm the judgment of the appellate court.

Appellate court judgment affirmed.

JUSTICE McMORROW, dissenting:

In his guilty plea, Talarico unconditionally conceded that he had the requisite 
mens rea
 to commit the violent offenses charged. In essence, when he pled guilty to the reduced criminal charges, Talarico admitted that he intentionally and knowingly, 
without legal justification
, pushed a 15-year-old boy to the ground and shocked him with a stun gun, and a week later, again 
without legal justification
, shocked a 25-year-old man with a stun gun, grabbed his genitals, and kissed him several times on the face. When he pled guilty to the reduced charges, he deliberately and knowingly forfeited the opportunity to assert that his violent conduct was actually caused by a third party's negligence in prescribing an acne medication. In the instant medical malpractice action, however, Talarico repudiates his admission of criminal intent and seeks compensatory damages 
arising out of his own criminal conduct
. Talarico should not be allowed to use the judicial system to have it both ways.

In my opinion, the decision of the majority invites the rancor of the community toward the legal profession and justice system. I believe that under the facts of this case, there is no legal justification for subjecting Dr. Dunlap and Dixie-Ashland to the expense and stress of trial, nor is there any justification for subjecting the taxpayers to the expense incurred by the use of the courts and resources of the state to litigate an issue which had previously been litigated. In my view, today's majority opinion sets an unfortunate precedent that is contrary to sound public policy, legal principles, and fairness. Through a flawed application of the doctrine of collateral estoppel, the majority permits Talarico to maintain contrary legal positions in two different lawsuits, thereby compromising the finality of the judgment, the integrity of the guilty plea, judicial economy, and fairness to the defendants in this case. Accordingly, I dissent.

As the parties concede, the majority acknowledges, and as the circuit court and appellate panel held, the elements of collateral estoppel are present in this case. The majority opinion expressly acknowledges that the “
mens rea
 element supporting Talarico's battery conviction and the proximate cause element in the malpractice suit are the same issue.” Why, then, should Talarico be allowed to proceed with his claim that the proximate cause of his violent attack on the victims was Dr. Dunlap's negligent prescription and monitoring of Accutane?

The majority's answer to this question relies entirely upon a strained application of the principle that collateral estoppel does not preclude relitigation of an issue if the party against whom the doctrine is asserted lacked sufficient incentive to litigate the particular issue in the first lawsuit. According to the majority, the incentive to litigate concept, as interpreted in the Restatement (Second) of Judgments §28 (1982), permits relitigation of an issue “ `if the party can show that the original litigation was a side show rather than a struggle to the finish.' ” Slip op. at 8, quoting G. Hazard, 
Revisiting the Second Restatement of Judgments: Issue Preclusion and Related Problems
, 66 Cornell L. Rev. 564, 584 (1981). I do not believe that the admissions defendant made while represented by his attorneys in his negotiated plea should be viewed as a “side show”; the stakes for the people of this state, as well as the defendant, are too high in a criminal prosecution to assume that plea negotiations are anything less than a “struggle to the finish.” Rather, such negotiations are a joint effort by the court, the prosecutor, and defense attorney to thoughtfully and knowingly resolve complex guilt and sentence issues fairly. Since Talarico cannot show that the original criminal litigation was a side show, his current attempt to relitigate the issue of his criminal intent falls outside the scope of the incentive to litigate exception to collateral estoppel.

According to the majority, however, Talarico may proceed with his claim against Dr. Dunlap because “only in the most technical sense was Talarico's guilty plea an admission that his criminal conduct was knowing and intentional.” Slip op. at 9. The majority reasons that the negotiated plea was a compromise in which Talarico never conceded that Accutane was not the contributing cause of his criminal conduct.

I question the precise sense in which Talarico's unequivocal admission of his engagement in intentional and knowing criminal conduct can be deemed a mere technicality. On the contrary, such an admission goes to the heart of the issue of Talarico's criminal responsibility. With respect to the majority's characterization of Talarico's guilty plea as a “compromise,” such observation is singularly unhelpful because in this context compromise is an essential component of negotiations. That Talarico made a calculated assessment of the risks of asserting the Accutane defense does not mean he lacked incentive to litigate the issue. Significantly, the fact that Talarico did not expressly concede in his guilty plea that Accutane did not cause his violent behavior is legally irrelevant because such a concession is implicit in his admission of intentional criminal conduct.

Although there may be instances in which a person's guilty plea in a criminal matter does not preclude that party from pursuing a civil claim which partly depends on facts admitted in the guilty plea, this is not such a case. At the time of his negotiated guilty plea, Talarico and his criminal defense attorneys were well aware that he had been under treatment with Accutane. Indeed, the record reveals that months before Talarico began his own treatment with Accutane, he had spent 100 to 200 hours researching the effects of Accutane while participating in a research project on that topic at his medical school. Accordingly, at the time of his guilty plea, Talarico possessed significant information from which to evaluate the merits of an Accutane-impairment defense. If Talarico proved his theory that negligently prescribed Accutane caused his criminal acts, thereby negating his criminal intent, he would have been entitled to outright acquittal. However, Talarico instead chose to plead guilty to reduced charges, and benefit from a sentence that included psychiatric treatment and probation. Having made that decision, Talarico should not now be permitted to pursue a lawsuit that places the blame on others and thereby repudiate his admittedly intentional criminal acts.

The instant case is virtually indistinguishable from 
Bulfin v. Eli Lilly & Co
., 244 Ill. App. 3d 785 (1993), where the appellate court rejected a similar attempt by a plaintiff who, after pleading guilty to criminal charges, subsequently sought damages in a civil lawsuit based on the allegation that certain medications manufactured by defendant had induced an intoxicated state that caused him to commit criminal acts, through no fault of his own. The plaintiff in the civil suit in 
Bulfin
, like plaintiff in the case at bar, knew at the time of his criminal proceedings that he might have a complete defense and be acquitted based on the use of the medications. In light of an offered plea negotiation, however, he forfeited the drug-induced impairment issue, and pleaded guilty to manslaughter and aggravated assault. After reviewing the elements of collateral estoppel and the incentive to litigate exception, the appellate court in 
Bulfin
 held that the plaintiff had been afforded a full and fair opportunity in the criminal case to litigate the issue of whether his actions resulted from an involuntarily induced state of intoxication. Accordingly, the appellate court held that the civil suit was properly dismissed on the basis of collateral estoppel. The 
Bulfin
 court observed that the incentive to litigate a complete defense to criminal charges is present in every case in which a person potentially faces a prison term for such charges and that “[i]t would be an anomaly to suggest that, when plaintiff abandoned his defense, he did so out of a lack of incentive as opposed to a desire to substantially reduce his potential prison term.” 
Bulfin
, 244 Ill. App. 3d at 791.

Without distinguishing the facts in 
Bulfin
 or explaining where the appellate court's analysis was flawed, the majority in the instant case expressly rejects the reasoning in 
Bulfin
 “as it relates to negotiated guilty pleas and the incentive to litigate.” Slip op. at 7. In so doing, the majority overlooks the strong policy concerns which arise when a criminal defendant is allowed to plead guilty to intentional or knowing crimes, and then subsequently to deny his criminal guilt for purposes of pursuing, in civil litigation, financial compensation for the consequences of his own criminal conduct. Justice and equity cry out for the application of collateral estoppel to the facts of this case.

Some of those concerns have been recognized by other jurisdictions. For example, in 
Cole v. Taylor
, 301 N.W.2d 766, 768 (Iowa 1981), the Iowa court rejected on public policy grounds a convicted defendant's subsequent claim in a civil suit that her psychiatrist's negligent treatment caused her to commit the crime. In a similar vein, a New York court cautioned that courts should not be expected to look behind knowing and voluntary pleas of guilt to relieve defendants from adverse civil consequences that may follow from the defendants' admissions of guilt to serious criminal charges. 
Merchants Mutual Insurance Co. v. Arzillo
, 98 A.D.2d 495, 472 N.Y.S.2d 97 (1984). The court held, “As long as the guilty plea stands, the defendant is guilty and cannot be heard to say otherwise.” 
Merchants Mutual Insurance
, 98 A.D.2d at 506, 472 N.Y.S.2d at 105. In 
Adkinson v. Rossi Arms Co
., 659 P.2d 1236, 1239-40 (Alaska 1983), a defendant who had been convicted of manslaughter was then sued by the victim's family for wrongful death. As a defense to the civil suit, he sought to implead the gun manufacturer on the ground that the gun was defective and had killed the victim when it discharged accidentally. The Alaska Supreme Court, in rejecting the defendant's attempt to implead the gun manufacturer, observed, “[A]llowing a criminal defendant who has been convicted of an intentional killing, to impose liability on others for the consequences of his own anti-social conduct runs counter to basic values underlying our criminal justice system.” 
Adkinson
, 659 P.2d at 1240.

The same public policy concerns enunciated in the above cases are present in the case at bar. Allowing Talarico to pursue the Accutane issue in his medical malpractice action in the case at bar creates an unwise precedent to impose on the courts of this state. Talarico waived the Accutane defense by his plea of guilt to intentional criminal conduct, and he should be bound by such admission as a matter of good law and sound policy.

By declining to impose collateral estoppel under the circumstances of this case, the majority allows a defendant to circumvent the finality of his guilty plea and to seek financial gain from third parties for his own criminal acts. Finality of judgments in negotiated plea criminal cases serves an important purpose in our criminal justice system. Once an accused who is represented by counsel decides to plead guilty to criminal charges and accept the consequences of his own conduct, he should not be able to use the civil court system to make a mockery out of the criminal proceedings by repudiating his guilty plea for pecuniary gain. The compensation that Talarico seeks in his civil suit is not limited to medical expenses or physical suffering from the side effects of Accutane. He seeks to be compensated for lost income and profit and lost educational advantage, presumably arising from Talarico's criminal conviction and the resulting impact it may have placed on his medical career. For these reasons, I find no principled basis on which to apply an exception to collateral estoppel in this case.

 The appellate court in 
Bulfin
 cited with approval the following:

“The clearest case for such an estoppel is where a defendant pleads guilty to a substantial criminal charge and then seeks in civil litigation concerning the same transaction to assert that he did not commit the criminal act. Particularly galling is the situation where a criminal convicted on his own guilty plea seeks as plaintiff in a subsequent civil action to claim redress based on a repudiation of the confession. The effrontery or, as some might say it, 
chutzpah
, is too much to take. There certainly should be an estoppel in such a case.” G. Hazard,
 Revisiting the Second Restatement of Judgements: Issue Preclusion and Related Problems
, 66 Cornell L. Rev. 564, 578 (1981). 

I agree with the foregoing and adhere to the basic values underlying our criminal justice system articulated in the 
Adkinson
 case. I would hold Talarico to his admissions based on collateral estoppel, and affirm the trial court's grant of summary judgment to the defendants. Accordingly, I dissent.