JAMES HURLBERT, Plaintiff-Appellant, v. ANDREW CHARLES *et al.*, Defendants-Appellees.

Fourth District No. 4—08—0765

Opinion filed July 17, 2009.

Robert G. Kirchner, of Robert G. Kirchner Law Office, of Champaign, for appellant.

Howard W. Small, of Law Office of Small & Freeman, Ltd., and Stanley E. Freeman, of Law Office of Ansel & Small, Ltd., both of Champaign, for appellees.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

In September 2007, plaintiff, James Hurlbert, filed a complaint for malicious prosecution against defendants, the City of Urbana and City of Urbana police officer Andrew Charles. The suit stemmed from plaintiff's October 2003 arrest for driving under the influence of alcohol (DUI) and the trial court's August 2004 dismissal of the charge. In September 2008, the trial court granted summary judgment in favor of defendants. The court held that a Champaign County circuit court's probable-cause finding after a hearing on plaintiff's petition to rescind his statutory summary suspension collaterally estopped relitigating whether Officer Charles lacked probable cause, a necessary element of a malicious-prosecution action. The court did not reach defendants' alternative argument that plaintiff could not show Officer Charles acted with malice.

Plaintiff appeals, arguing that collateral estoppel does not apply to the circuit court's findings and decision in a summary-suspension proceeding. We hold that the trial court's probable-cause determination at a statutory-summary-suspension hearing collaterally estops its relitigation.

In October 2003, Officer Charles arrested plaintiff for DUI following a traffic stop. In November 2003, plaintiff filed a written petition to rescind the statutory summary suspension of his driver's license (625 ILCS 5/2—118.1(b) (West 2006)). Plaintiff's petition alleged, in pertinent part, Officer Charles did not have reasonable grounds (probable cause) to arrest for DUI.

In December 2003, the trial court held a hearing on plaintiff's petition to rescind, during which plaintiff and the State introduced the following facts. On direct examination by plaintiff's counsel, Officer Charles testified that he was on duty in a marked squad car when he received a stolen-vehicle report regarding a Dodge pickup truck over his radio. Around 2 a.m., Officer Charles saw plaintiff's Dodge pickup truck driving in the opposite direction. Plaintiff's truck closely matched the stolen truck's description, and Officer Charles turned around to follow it. When Officer Charles caught up with plaintiff's truck, he determined it was not stolen because its license-plate number did not match the stolen truck's number. However, according to Officer Charles's testimony, plaintiff let his truck drift from the left-hand lane "three-quarters of the way over in[to] the right-

hand lane" before drifting back. Plaintiff drifted out of his lane again when turning onto a highway entrance ramp, at which point Officer Charles curbed plaintiff's truck. Officer Charles testified plaintiff's truck "continued to roll forward after [he] signaled for it to stop. \*\*\* It's unusual for cars to slow but continue to roll for—as was in this case—at least 150 to 200 yards."

According to Officer Charles's testimony, he turned on the squad car's video camera and approached plaintiff, who was in the driver's seat. Plaintiff smelled of alcohol and admitted having had two or three drinks that night. Officer Charles testified plaintiff slurred his words slightly and could not provide a driver's license or proof of insurance. After City of Urbana police officer Bain arrived, Officer Charles conducted field-sobriety tests. Officer Bain unmounted the video camera from Officer Charles's squad car and recorded the sobriety tests at close range. Officer Charles testified that plaintiff exhibited signs of impairment when asked to repeat the alphabet from letter "D" to letter "S" and count backward from 67 to 62. Officer Charles arrested plaintiff for DUI and transported him to the county jail.

On cross-examination by the State, Officer Charles stated that he had conducted over 900 field-sobriety tests in his career and had made over 400 or 500 DUI arrests. Regarding the alphabet test, Officer Charles testified plaintiff mouthed the letters "A" through "D" before saying "D" out loud, paused at the letter "L," and skipped over the letter "N" entirely.

Officer Charles further elaborated that plaintiff exhibited signs of impairment on the finger-to-nose test. On the finger-to-nose test, the driver is supposed to tilt his head back, close his eyes, and move his index finger from his side to the tip of his nose and back in one motion. According to Officer Charles's testimony, plaintiff would open his eyes when tipping his head back, acted hesitantly when moving his hand to his nose, and required multiple commands to move his index finger to his nose and back, rather than executing the test in one motion. Officer Charles testified plaintiff showed signs of impairment on each test plaintiff performed.

On direct examination by his own counsel, plaintiff testified he was 62 years old and his left leg was one inch shorter than his right leg. Plaintiff testified that contrary to information contained in Officer Charles's police report, he was not wearing jeans or dress shoes and never drinks beer. Plaintiff admitted that he drank three mixed drinks the night of his arrest. According to plaintiff's testimony, he did not drift across the lane line while Officer Charles was following his truck. Plaintiff further testified that he stopped as soon as he realized Officer Charles wanted to curb his truck, rather than simply pass him.

The trial court denied plaintiff's petition to rescind statutory summary suspension. The court specified its finding in denying the petition on the record, which follow:

"[T]he [c]ourt's own layman's observation on the video is that this appeared to be a person who didn't have a steady hand at the wheel. The vehicle's essentially regularly drifting, whether it's on the straight road, whether it's in the portion of the turn or whether it's as the vehicle is at the time when it does eventually move over onto the shoulder.

It appears that *** this person doesn't have a steady hand in control of the wheel. ***

Once [plaintiff] is stopped, the officer observes a strong odor of alcohol coming from the vehicle, he said. *** [Officer Charles] notices slurred speech. [Plaintiff], according to the officer, says he had two to three beers. According to [plaintiff,] three mixed drinks. In any event, [plaintiff] certainly has provided knowledge that he[ ] [has] been drinking and then is asked to take tests.

*** [T]he [c]ourt's observation of how [plaintiff] speaks on the tape is markedly different than how he speaks in court. His speech in court is clear. It's direct. It's obviously a person of understanding. And that's different from what's on tape. Not only did the speech pattern appear much different, did there appear to be more slurring, but it was much more deliberate and direct. *** [The court] believe[s] that's consistent with impairment that the officer talks about.

Then there was a marked pause in doing both the alphabet and in counting when the counting test was asked for. There were marked pauses, more than just deliberation. There was evidence of impairment.

[Plaintiff] did *** appear to be shaky and have difficulty both moving his finger, turning his head back[,] and closing his eyes at the same time. And given all the observations that the officer had of his driving and of those things, a person of common sense would believe that the driver was under the influence of alcohol. *** [T]here was probable cause to arrest."

Plaintiff took no appeal from the trial court's denial of his petition to rescind. In August 2004, a docket entry from the trial court shows that it granted a motion to dismiss the DUI prosecution with prejudice. The record does not provide grounds for the dismissal. In September 2004, plaintiff's attorney withdrew from representation, and plaintiff, *pro se,* filed a second petition to rescind his statutory summary suspension, which the State contested. In November 2004, the court denied plaintiff's second petition to rescind his statutory summary suspension. Later in November 2004, the court denied plaintiff's third peti-

tion to rescind his statutory summary suspension and granted the State's cross-motion to dismiss the DUI prosecution without prejudice. (We note defendants admitted in their answer that on September 22, 2006, the prosecution was again dismissed with prejudice although nothing in the record shows the court amended its earlier dismissal.)

On September 24, 2007, plaintiff filed his initial complaint herein. In January 2008, plaintiff filed a first-amended complaint herein, which alleged, in pertinent part, that Officer Charles pursued a DUI arrest

"despite [plaintiff] having not exhibited any indicia of impairment from the consumption of alcohol, including, *inter alia* the fact that, his driving was not impaired, his speech was not slurred, his balance and equilibrium were not impaired; he was not thick tongued[;] and he did not exhibit indicia of impairment to his mental or physical faculties.

\*\*\* [Officer Charles] acted as complained of herein with malice, in that he acted in the complete absence of probable cause[ ] and abused his position of authority in response to [p]laintiff's perceived challenge to his authority."

In June 2008, defendants filed a motion for summary judgment, arguing the trial court's probable-cause determination at the statutory-summary-suspension hearing collaterally estopped plaintiff from proving Officer Charles lacked probable cause to arrest. Plaintiff argued that *People v. Moore*, 138 Ill. 2d 162, 170, 561 N.E.2d 648, 652 (1990), in which the supreme court held that the results of statutory-summary-suspension proceedings do not collaterally estop an issue's relitigation in a subsequent DUI prosecution, applied to all collateral proceedings.

In a September 2008 hearing on the motion for summary judgment, the trial court held that the probable-cause finding at plaintiff's summary-suspension hearing collaterally estopped the issue's relitigation. The court reasoned as follows:

"*Moore* is limited on its face to an application of collateral estoppel to the subsequent DUI proceeding. \*\*\* *Moore* and the policy which underlies *Moore* was [not] intended to prohibit a collateral[-] estoppel effect of the [statutory-]summary[-]suspension proceedings to subsequent civil cases."

On that basis, the court granted summary judgment in favor of defendants. Because the court found the collateral-estoppel issue dispositive, it did not reach defendants' alternative argument that plaintiff could not show malice.

This appeal followed.

■ To succeed in an action for malicious prosecution, the plaintiff must show the following: (1) defendants began or continued the

original criminal proceeding, (2) the criminal proceeding terminated in plaintiff's favor, (3) defendants lacked probable cause, (4) malice existed, and (5) plaintiff suffered damages as a result. *Swick v. Liautaud*, 169 Ill. 2d 504, 512, 662 N.E.2d 1238, 1242 (1996). "Actions for malicious prosecution are disfavored because public policy encourages the exposure of crime and cooperation from people with knowledge about crime." *Aguirre v. City of Chicago*, 382 Ill. App. 3d 89, 96, 887 N.E.2d 656, 662 (2008).

Plaintiff argues the trial court erred when it held the trial court's probable-cause determination in statutory-summary-suspension proceedings collaterally estopped its relitigation in the instant proceeding. Defendants argue *Moore* is limited to its facts and only applies to the subsequent DUI prosecution.

■ Collateral estoppel bars relitigation of an issue decided in a prior case. *In re A.W.*, 231 Ill. 2d 92, 99, 896 N.E.2d 316, 321 (2008). Whether collateral estoppel arises from statutory-summary-suspension proceedings is a question of law, which this court reviews *de novo*. See *A.W.*, 231 Ill. 2d at 99, 896 N.E.2d at 321. The minimum threshold requirements for the application of collateral estoppel are as follows:

> "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Gumma v. White*, 216 Ill. 2d 23, 38, 833 N.E.2d 834, 843 (2005).

Collateral estoppel applies only where the parties had opportunity and incentive to fully litigate the issue in the prior proceeding. *Talarico v. Dunlap*, 177 Ill. 2d 185, 192, 685 N.E.2d 325, 328 (1997).

■ A review of the proceedings on plaintiff's statutory-summary-suspension proceedings reveals the elements of collateral estoppel are met in this case. In both this proceeding and the statutory-summary-suspension hearing, plaintiff had the burden of proof. Compare *Aguirre v. City of Chicago*, 382 Ill. App. 3d 89, 96, 887 N.E.2d 656, 662 (2008) (stating burden of proof rests with plaintiff), with *People v. McClure*, 218 Ill. 2d 375, 383, 843 N.E.2d 308, 313 (2006) (stating petitioner-motorist has burden of proof). Plaintiff conducted a full, adversarial hearing on the issue of probable cause before a trial court judge. Plaintiff's counsel examined both Officer Charles and plaintiff himself. Officer Charles testified that plaintiff performed poorly on the roadside sobriety tests and exhibited other indicia of impairment. Plaintiff testified he was not impaired. The State cross-examined both witnesses and introduced the video of plaintiff's roadside sobriety tests into evidence. Both parties argued the motion's merits before the trial court ruled.

The trial court denied plaintiff's petition in a lengthy oral ruling that set out the basis for the petition's denial. The court specifically found Officer Charles testified credibly and the video supported his testimony. Plaintiff had the opportunity to appeal the petition's denial but did not. See 155 Ill. 2d R. 301 ("Every final judgment of a circuit court in a civil case is appealable as of right").

In *Moore*, the supreme court noted that the elements of collateral estoppel are typically present after a probable-cause determination in a petition-to-rescind-statutory-summary-suspension hearing but declined to apply the doctrine for policy reasons. *Moore*, 138 Ill. 2d at 168-70, 561 N.E.2d at 651-52. The *Moore* court initially cited a First District opinion that reasoned the petition-to-rescind-summary-suspension proceeding is a type of administrative proceeding rather than a part of the criminal proceeding; it is civil in nature and designed to promptly remove impaired drivers from the road. *Moore*, 138 Ill. 2d at 168, 561 N.E.2d at 651.

The *Moore* court was concerned hearings on petitions to rescind statutory summary suspensions would become minitrials if the petitioner could collaterally estop an issue's litigation in the subsequent DUI proceeding. *Moore*, 138 Ill. 2d at 169-70, 561 N.E.2d at 652. The supreme court reasoned as follows:

> "Given even the possibility that the results of a [statutory-] summary[-]suspension hearing would act as collateral estoppel, the State would likely find it necessary to treat the suspension hearing as an integral part of the criminal trial rather than merely an administrative device at the disposal of the defendant in which the defendant can halt the otherwise automatic suspension of his driving privileges. The process would seldom, if ever, be swift. Law[-] enforcement officers would be required to testify regardless of whether the defendant subpoenaed them. The State would also be required to present witnesses to establish that [the] defendant was in fact driving and was doing so while impaired ***." *Moore*, 138 Ill. 2d at 169-70, 561 N.E.2d at 652.

We agree with the trial court; *Moore* is limited to the facts before the court in that case. See *People v. Flatt*, 82 Ill. 2d 250, 261, 412 N.E.2d 509, 515 (1980) (noting precedential scope of a decision limited to the facts before the court). The policy reasons that underlie the holding in *Moore* are not applicable to subsequent civil proceedings. The State will not begin treating statutory-summary-suspension hearings as minitrials because of the threat of collateral estoppel in a later civil proceeding. Unlike the DUI prosecution, later civil litigation is generally unforeseeable at the time of the hearing. Further, because the malicious-prosecution plaintiff must prove all elements of the

cause of action, the threat of civil damages remains remote if collateral estoppel applies.

Moreover, plaintiff's concerns that collateral estoppel will bar meritorious actions because of the limited nature of the statutory-summary-suspension proceeding are unfounded. Collateral estoppel is an equitable doctrine. *Talarico*, 177 Ill. 2d at 191-92, 685 N.E.2d at 328. The supreme court has barred the use of offensive collateral estoppel where its application would result in fundamental injustice or unfairness to one of the parties. See *People v. Jones*, 219 Ill. 2d 1, 83, 845 N.E.2d 598, 643 (2006). Where injustice will result from collateral estoppel's application, the trial court has discretion to decline to estop relitigation. See *In re Owens*, 125 Ill. 2d 390, 399, 532 N.E.2d 248, 252 (1988). For example, collateral estoppel should not apply where the State relied on an inadequate police report or failed to contest the petition. In other cases, collateral estoppel would likely not apply where an indigent DUI defendant raised a lack of probable cause at the statutory-summary-suspension hearing but could not properly litigate the issue. As a result, plaintiff's concerns are unfounded. The limited nature of a statutory-summary-suspension hearing is not incompatible with the application of collateral estoppel.

Accordingly, because plaintiff fully and fairly litigated the issue of probable cause at his statutory-summary-suspension hearing, collateral estoppel bars its relitigation in this case. Because we affirm on collateral-estoppel grounds, we decline to rule if plaintiff's complaint has raised a question of material fact whether Officer Charles acted with malice.

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

STEIGMANN and APPLETON, JJ., concur.