PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellant,*

v.

RICHARD J. RIZZI,
       *Defendant-Appellee.*

No. 05-4240

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, District Judge.
(CR-04-425-JFM)

Argued: September 22, 2005

Decided: January 9, 2006

Before NIEMEYER, Circuit Judge,
HAMILTON, Senior Circuit Judge, and
Robert J. CONRAD, Jr., United States District Judge
for the Western District of North Carolina,
sitting by designation.

Reversed and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Senior Judge Hamilton and Judge Conrad joined.

## COUNSEL

**ARGUED:** Philip S. Jackson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore,

Maryland, for Appellant. Joanna Beth Silver, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellee. **ON BRIEF:** Allen F. Loucks, United States Attorney, Baltimore, Maryland, for Appellant. James Wyda, Federal Public Defender, Martin G. Bahl, Staff Attorney, Baltimore, Maryland, for Appellee.

---

**OPINION**

NIEMEYER, Circuit Judge:

Executing a search warrant in connection with a drug-trafficking investigation, state and federal law enforcement officers searched the residence of Richard Rizzi at 7127 Willowdale Avenue in Baltimore, Maryland, for drugs, firearms, money, and related items. The search was conducted at 4:30 in the morning. The officers seized firearms, and a federal grand jury thereafter indicted Rizzi for being a felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1).

On Rizzi's motion, the district court suppressed the seized evidence, concluding that the nighttime execution of the warrant violated Federal Rule of Criminal Procedure 41(e)(2)(B) because the officers did not attempt to demonstrate, and the authorizing judicial officer did not determine, that "good cause" existed for a nighttime search. The court rejected the government's argument that 21 U.S.C. § 879, which specifically authorizes the nighttime execution of a search warrant involving controlled substances, governs, rather than Rule 41(e).

Because we conclude that 21 U.S.C. § 879 provides a specific authorization for circumstances such as those presented in this case, we reverse and remand for further proceedings.

I

In June and July 2004, when Baltimore City police officers were investigating drug activity at the Holiday House bar in Baltimore City, they witnessed Richard Rizzi drive to the Holiday House and apparently sell drugs out of the restroom and out of his Chevrolet

pickup truck. The officers followed Rizzi back to his residence, determining that he lived at 7127 Willowdale Avenue. Near the end of June, the officers recovered garbage bags from Rizzi's residence and discovered cocaine residue on some of the trash. Upon learning that Rizzi had previously been convicted of drug-possession and drug-trafficking crimes, the Baltimore City police officers contacted federal law enforcement officers, who advised the Baltimore City officers that Rizzi was barred from possessing firearms because of his prior convictions.

On July 7, 2004, the Baltimore City police officers obtained a search warrant from a state court judge to search Rizzi's Willowdale Avenue residence and pickup truck for drugs, firearms, money, records, and other drug-related paraphernalia. The warrant commanded the officers to execute the warrant "forthwith."

At approximately 4:30 a.m. on July 9, 2004, federal, state, and Baltimore City law enforcement officers assembled to execute the search warrant. After knocking loudly on the front door of Rizzi's house, announcing, "police, search warrant," and waiting 15 to 20 seconds, the police forced open the front door. Inside they apprehended Rizzi, who was climbing the stairs to the kitchen from the basement where he had been sleeping. Officers also apprehended Rizzi's girlfriend, who was in the basement, and a houseguest, who was sleeping in the living room near the front door. After Rizzi was read his *Miranda* rights, he directed police to firearms that he kept in the basement.

A federal grand jury indicted Rizzi for possession of firearms by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and Rizzi pleaded not guilty. Thereafter, on his motion to suppress the evidence, the district court conducted a hearing, took testimony, and ultimately granted Rizzi's motion. The court ruled that the search was conducted in violation of Federal Rule of Criminal Procedure 41(e)(2)(B) because the police did not demonstrate, and the judicial officer did not find, good cause for executing the search warrant at night. The court rejected as "unpersuasive" the government's contention that 21 U.S.C. § 879 "trumps" Rule 41(e)(2)(B). The court observed, "Section 879 does not preempt Rule 41(e)(2)(B) but dovetails with it." The court also concluded that it need not decide "whether the search also violated constitutional standards," but it allowed that the "constitutional-

ity of the search [was], at best, questionable" because it was conducted at night without good cause to justify a nighttime search; the officers waited only 15 to 20 seconds; and the search warrant was executed by 24 officers.

From the district court's ruling granting Rizzi's motion to suppress, the government filed this appeal. *See* 18 U.S.C. § 3731. Neither party contests that federal law governs, that probable cause supported the warrant, or that this was a nighttime search involving controlled substances. Their debate centers on the applicability of Federal Rule of Criminal Procedure 41(e) and 21 U.S.C. § 879, and on § 879's constitutionality.

## II

The government contends that the district court erred in applying Federal Rule of Criminal Procedure 41(e) as the benchmark against which to measure the unlawfulness of the execution of the search warrant in this case. It argues that where the search targets illegal drugs, 21 U.S.C. § 879 governs.

Rizzi argues that it is inconsequential whether Rule 41(e) or § 879 is the proper measure because the search in this case violated both provisions. Addressing § 879, Rizzi contends that because "the warrant did not authorize a nighttime search, [it] thus failed to satisfy the requirements of [§ 879]." Recognizing that *Gooding v. United States*, 416 U.S. 430 (1974), has addressed the interaction of Rule 41 and § 879, Rizzi maintains that *Gooding* held that § 879 only means that "no special *showing* for a nighttime search is required." According to Rizzi, *Gooding* "does not mean that no *finding* by the issuing judge is necessary, or that the warrant need not expressly *authorize* the warrant's nighttime execution. The Supreme Court has not read these requirements out of the statute, nor could it." Rizzi's argument thus depends on distinguishing between the police officers' *showing* and the judicial officer's *findings* and *authorization* of the warrant.

Rule 41(e), which the district court applied to grant Rizzi's motion to suppress, provides in relevant part:

The warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned. *The warrant must command the officer to: . . . (B) execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time*[.]

Fed. R. Crim. P. 41(e)(2)(B) (emphasis added). The district court found that "the warrant was issued by a state judicial officer who was not called upon to make the determination (and, in fact, did not do so) that 'good cause' existed for executing the warrant at 4:30 a.m." and therefore suppressed the government's firearms evidence for failing to satisfy Rule 41(e).

Conceding that the good cause requirement of Rule 41(e) was not fulfilled, the government contends that § 879, not Rule 41(e), applies because the search in this case involved controlled substances. Section 879 provides:

A search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge or United States magistrate issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time.

21 U.S.C. § 879.

The district court rejected the government's contention that § 879 trumps Rule 41(e), finding instead that Rule 41(e) "dovetails" with § 879. The district court reasoned that § 879 authorized service "at any time, day or night, if the judge or United States magistrate judge issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant *and for its service at such time*." (Internal quotation marks omitted). The district court concluded that the Supreme Court's decision in *Gooding* did not require a different result, because the warrant there did in fact authorize a nighttime search, and because *Gooding* only held that "'no special *showing*' was required to support the nighttime search thus authorized. The Court did not hold that the nighttime search did not have to be expressly authorized by a judge." (Emphasis added).

In *Gooding*, the Supreme Court observed that a pre-1972 version of Federal Rule of Criminal Procedure 41 was a *general* provision governing federal search warrants, whereas 21 U.S.C. § 879 was a *specific* provision governing federal narcotics search warrants, which was enacted by Congress "in response to the complaints of law enforcement officers that [Rule 41] gave commercial narcotics dealers a definite advantage over federal agents." *Gooding*, 416 U.S. at 439. Applying the principle that specific laws trump general ones, the *Gooding* Court held that Rule 41 was "not applicable to searches governed by the more specific narcotic search statutes." *Id.*; *see also id.* at 453 (noting that Rule 41 "did not apply to narcotics cases in the federal courts since more specific provisions . . . those of 21 U.S.C. § 879(a), controlled"). The pre-1972 version of Rule 41 provided that warrants must be served in the daytime except where "the affidavits are positive that the property is on the person or in the place to be searched." In other words, the Rule required officers to satisfy a "positivity requirement" before they could serve a warrant at night, whereas § 879 authorized service at any time of the day or night.

The fact that Rule 41 was amended in 1972 to require generally that search warrants be served in the daytime "unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime" does not undermine *Gooding*'s applicability to the 1972 version. The 1972 rule's provisions, which remain in the rule today as Rule 41(e)(2)(B), parallel the pre-1972 version in that both versions require an additional showing to justify the nighttime execution of a warrant. As the *Gooding* Court explained, "The concern for individual privacy . . . may thus be found in the new [1972 version of the] Federal Rule as well, but Congress, as it had in the earlier version of the Rule, nevertheless showed the clear intention to leave intact other special search warrant provisions, including, of course, the provisions [of § 879] relating to searches for controlled substances. *In those limited cases Congress has considered the need for privacy to be counterbalanced by the public need for more effective law enforcement*." *Id.* at 453-54 (emphasis added) (footnote omitted).

We accordingly conclude that the Supreme Court's holding in *Gooding* controls here even though the Court had before it an earlier version of Rule 41. Rule 41(e) still applies to federal searches gener-

ally, and § 879 still applies to federal narcotics searches specifically. This case is governed by § 879, not Rule 41(e).

In order to make an argument that both § 879 and Rule 41(e) can be applied, as the district court seems to have concluded, Rizzi would limit *Gooding* to hold simply that § 879 requires police officers to make a special "*showing* for a nighttime search," 416 U.S. at 458, and as so limited, the Court's holding would only prioritize § 879 over Rule 41 insofar as they require different *showings*. In limiting the tension between § 879 and Rule 41(e) to only "showings," Rizzi would have Rule 41(e) continue to apply to judges'"findings" at hearings before they "authorize" searches.

We find this argument unpersuasive as it ignores the plain meaning of the text of § 879. That statute provides that a search warrant "may be *served* at any time of the day or night" so long as the judicial officer "is *satisfied*" that probable cause exists. The distinctions between showings, findings, and authorizations urged by Rizzi are not meaningful to the statute that itself authorizes nighttime searches. In addition, the Court in *Gooding* observed that before enactment of the current statute, "[c]ase law had uniformly interpreted the language [of the prior statute] to mean that probable cause for the warrant itself was *all* that was necessary for a nighttime search." *Id.* at 457 (emphasis added). The Court went on to point out that there is no suggestion from the debates before Congress that Congress intended to change the prior law when it enacted § 879. Finally, Rizzi's argument overlooks the important holding in *Gooding* that Rule 41 *is not applicable* to search warrants involving drug violations. *Id.* at 439. This does not leave room for an argument now that § 879 governs in only limited respects and Rule 41(e) governs in other respects.

Finally, addressing the language of § 879, Rizzi urges an interpretation — one that the district court appears to have adopted — that a nighttime search can take place only if probable cause exists for the warrant *and* for its service at night. The problem with this construction is that the antecedent for "its service *at such time*" in § 879 is not "nighttime" but the phrase "any time of day or night." It would make no sense to require an additional showing for service in the "day or night." For this and other reasons arising from § 879's legislative history, the Supreme Court explicitly rejected Rizzi's construction, inter-

preting § 879 to mean that "probable cause for the warrant itself [is] all that [is] necessary for a nighttime search." *Gooding*, 416 U.S. at 457.

At bottom, we hold that when a search warrant involves violations of drug crimes, the warrant can be served day or night so long as the warrant *itself* is supported by probable cause. And to the extent that § 879 might be found to conflict with the general requirement of showing good cause for nighttime searches contained in Rule 41(e), we hold that § 879 applies exclusively. *See also United States v. Tucker*, 313 F.3d 1259, 1264 (10th Cir. 2002); *United States v. Burch*, 156 F.3d 1315, 1325 (D.C. Cir. 1998); *United States v. Keene*, 915 F.2d 1164, 1168 (8th Cir. 1990).

Accordingly, because no party has questioned that the warrant in this case was issued on probable cause and involved controlled substances, § 879 authorizes its execution at any time day or night. For this reason, we reverse the district court's order granting Rizzi's motion to suppress.

## III

Rizzi contends that if § 879, and not Rule 41(e), governs the search in this case, as the government contends and we hold, then the statute is unconstitutional. He states:

> Indeed, were the government correct that section 879 provides absolute, blanket authorization for nighttime searches in drug cases — even when the warrant does not authorize such a search — the statute would be unconstitutional. More than 20 years after its opinion in *Gooding*, the Supreme Court made clear that there are no blanket exceptions to the Fourth Amendment's requirements in drug cases. *See Richards v. Wisconsin*, 520 U.S. 385, 391-95 (1997) (no exception to knock-and-announce rule in drug cases). The Court emphasized that any such exception would be constitutionally overbroad because, while drug investigations frequently pose special risks to officer safety and the preservation of evidence, they do not invariably pose such risks to a substantial degree. *See id.* at 393.

Because the district court did not reach this or any other constitutional issues, we are reluctant to do so on this appeal without first having afforded the district court the opportunity to consider them. With respect to the constitutionality of 21 U.S.C. § 879, however, we feel compelled to address the limited argument that Rizzi makes in the quoted portion above, since it falls within the scope of our direct review of the district court's order rejecting the applicability of that statute.

Rizzi's argument that *Richards v. Wisconsin* interpreted the Fourth Amendment to forbid all statutory blanket exceptions in drug cases reads *Richards* too broadly. In *Richards*, the Court held more narrowly that the Fourth Amendment forbids statutes that except a class of searches from the knock-and-announce requirement. *See Richards*, 520 U.S. at 391-95. Legislatures cannot abrogate the knock-and-announce rule, even for a small class of searches, because the rule is incorporated within the Fourth Amendment; judges must decide, either before or after a search on a case-by-case approach, whether dispensing with a knock and announcement was reasonable. *Richards*, 520 U.S. at 394; *see also Wilson v. Arkansas*, 514 U.S. 927, 934-36 (1995) (holding that officers must knock and announce themselves and leaving to lower courts the task of "determining the circumstances under which an unannounced entry is reasonable under the Fourth Amendment"). The Supreme Court, however, has never held that the Fourth Amendment prohibits nighttime searches, despite the disapproval voiced occasionally by a Justice in dissent. *See, e.g.*, *Gooding*, 416 U.S. at 462, 464 (Marshall, J., dissenting).

Because the rule against no-knock searches is a component protection of the Fourth Amendment warrant requirement, it may be dispensed with only in particular exigent circumstances where knocking would undermine the effect of the warrant. But constitutionalizing a standard for *when* warrants can be served would involve so many variables that any rule would be difficult to articulate, much less serve as a component protection of the Fourth Amendment. Unlike the simple knock-and-announce requirement, the appropriate time for a search of a home is not amenable to a universal rule. The same privacy interest exists night and day, every day, and the Fourth Amendment knows no holidays. What differs is how individuals experience intrusions on that privacy. Some people work at night and sleep by

day, and others value most highly the privacy of the daytime. The intrusion on privacy during some daytime activities would undoubtedly be even more burdensome than a nighttime intrusion. For example, execution of a warrant during a family dinner on Thanksgiving day or during the celebration of a wedding might be considered more intrusive than a routine nighttime execution of a warrant at 10:30 p.m. But every search burdens the peace, privacy, and personal convenience of persons in their homes because police intrusion into the close of the home is inherently burdensome. For that reason, the Constitution provides the fundamental protection — night and day — that a search of a home can be conducted only with the authority of a warrant issued on probable cause (with exceptions not here relevant), and even then it must be conducted reasonably.

The existence of a minimum constitutional protection, however, does not deny legislatures the power to provide additional, more nuanced protections, based on the wishes and habits of their constituents. Legislatures, unlike courts, are better able to evaluate the many factors involved. Indeed, Congress has done so in connection with nighttime searches generally, approving Federal Rule of Criminal Procedure 41(e), as have some States, *see generally* 2 Wayne R. LaFave, *Search and Seizure* § 4.7 (4th ed. 2004). But legislatures are also free to make exceptions to such legislation, as Congress did in enacting 21 U.S.C. § 879. Both enactments — of Rule 41(e) and 21 U.S.C. § 879 — are within the scope of the government's police power and are not prohibited or compelled by the Fourth Amendment.

IV

For the foregoing reasons, we reverse the district court's order of February 1, 2005, granting Rizzi's motion to suppress, and remand for further proceedings.

*REVERSED AND REMANDED*