RANDOLPH, Senior Circuit Judge,
dissenting in part and concurring in the judgment in part:
There are two basic and related reasons why I believe the majority errs in deciding that the defendants violated the Fourth Amendment when they allegedly executed a daytime search warrant at night. The first reason should have been conclusive. It is that collateral estoppel bars Jones’ claim about the timing of the search. In the criminal proceedings leading to Jones’ conviction that very issue was decided against him, not once but several times, because his allegation turned out to be false. The second reason is that the majority’s determination to reach out and decide this constitutional issue despite that finding and despite the defendants’ immunity from suit is an abuse of discretion.
All that is before us in this case is Jones’ complaint, the fourth civil suit he has filed *90 during his imprisonment on a plea of guilty for drug dealing. His latest action alleges that more than a decade ago officers began searching his home at 4:45 a.m. although the search warrant authorized a search only between 6:00 a.m. and 10:00 p.m. and that the defendant officers therefore violated the Fourth Amendment to the Constitution. '
In order to reach this constitutional issue, the majority opinion decides two new and significant points of law for this circuit: that alternative holdings do not give rise to collateral estoppel and that suppression is not the proper remedy for violation of a warrant’s timing requirement. Jones raised neither of these issues in this court or in the district court, and yet the majority opinion decides both "of them in order to reach a constitutional question that is irrelevant to the disposition of this case because of the defendants’ immunity.
In coming to these conclusions, the majority opinion also assumes the truth of Jones’ allegation. Yet in the criminal proceedings against Jones, the district court made an evidentiary finding that Jones’ allegation was false and that the search actually occurred after 6:00 aim.
The search of Jones’ home was part of a coordinated take-down on the morning of October 24, 2005, in which FBI, Metro Police, and other officers simultaneously searched several different properties. More than half a dozen officers - including defendants in this case — testified that at 6:00 a.m., the FBI command center sent out the signal for all teams to execute their warrants. At Jones’ Moore Street house, Agent Steven Naugle — a defendant in this case — was team leader. Agent Naugle testified that the call “went out over the radio ... at 6:00 a.m. to execute our search warrants.” Trial Transcript at 41, No. 1:05-cr-00S86-ESH (Feb. 11, 2013), ECF No. 739. The team, which had been parked at a nearby shopping center, drove to Jones’ house and entered at approximately 6:15 a.m. Id. at 41, 75.
In his initial motion to suppress, Jones did not mention the timing of the search. He later filed two “Motion[s] for Reconsideration” of the motion to suppress, in which he raised the issue. Attached to his motions were affidavits from his wife and son claiming that agents had entered his home at 4:45 a.m. See Motion for Reconsideration, No. 1:05-er-00386-ESH (D.D.C. May 22, 2012), ECF No. 619-3, No. 619-4, No. 619-5; Motion to Reconsider at 34-44, No. 1:05-cr-00386-ESH (D.D.C. Feb. 19, 2013), ECF No. 688. Judge Huvelle denied the first motion in an oral bench ruling, stating that even if Jones had a right to have the warrant executed at 6:00 a.m. rather than 4:45 a.m., “the remedy would not be suppression.” Trial Transcript at 11, No. 1:05-cr-00386ESH (D.D.C. Aug. 10, 2012), ECF No. 670-5. She denied the second motion in a minute order, which stated that the motion was “denied for the reasons stated on the record in open[ ] court.” Minute Entry, No. 1:05-cr-00386-ESH (D.D.C. Feb. 19, 2013).
In giving those reasons, Judge Huvelle made a specific factual finding that the search occurred after 6:00 a.m. Trial Transcript at 3-4, No. l:05-cr-00386-ESH (D.D.C. Feb. 19, 2013), ECF No. 780. Here is what she said from the bench:
I credit the testimony of Naugle and the many, many, many other police officers, all of whom got the go-ahead to start at 6 a.m.
I’m telling you that police do not— they go at the same time. It will undercut the whole purpose of executing a search warrant if half of them go at one time and half go at another time.
The testimony is absolutely consistent. We heard from Naugle that he went in *91 to the Moore Street house at 6 a.m. or shortly thereafter, consistent with Magistrate Judge Charles Day’s order. And we find that — listening to the testimony we know from the people who executed the warrant at the co-conspirator’s house from Detective Webb, he testified; Ashby testified; somebody testified with respect to Demetrius Johnson’s. Ms. Counts, special agent now retired Counts, testified; Norma Horne testified; and Detective Kirschner [sic] testified.
There’s consistent testimony that they went in at 6:00 when they got the word. Or after 6:00. So I find no basis to credit Ms. Jones’s testimony. I find the police officers to be totally consistent. I’ve already ruled five times it’s legally irrelevant. And I still stand by that. But to the extent I need to make findings of fact, I find that this search was executed after 6 when command center gave the go-ahead to all these officers to take down this conspiracy.
The warrant itself, now reproduced in its entirety asmn addendum to the majority opinion, corroborates Judge Huvelle’s finding. On page two of the warrant, under the heading “DATE AND TIME EXECUTED,” is the notation “10/24/05 6:15 AM.” This statement deserves great weight not only because it was made contemporaneously but also because it was made in compliance with Rule 41(f)(1)(A) of the Federal Rules of Criminal Procedure b “The officer executing the warrant must enter on it the exact date and time it was executed.”
Under Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), rulings on motions to suppress have pre-clusive effect in later civil suits. See McClam v. Barry, 697 F.2d 366, 371 n.3 (D.C. Cir. 1983) (“[Collateral estoppel should apply in Bivens-type actions as it applies in section 1983 actions.”), overruled on other grounds by Brown v. United States, 742 F.2d 1498 (D.C. Cir. 1984). Jones has already litigated the issue about the timing of the search, and he has lost.
This collateral estoppel issue has already been decided in this circuit as a matter of federal law.[2] Evanson v. United States, 84 F.3d 1452 (D.C. Cir. 1995), aff'g 878 F.Supp. 1 (D.D.C. 1995), was a civil damage action like this case alleging a violation of the Fourth Amendment. The plaintiff in Evanson had been convicted of gun crimes in federal court. He declined to appeal his conviction and then filed a Bivens suit against several of the federal officers who took part in the search. Judge Friedman ruled that the plaintiff was collaterally estopped from contesting the constitutionality of the search because “[a]t the suppression hearing [in federal court *92 in his criminal case], at which he was represented by counsel, plaintiff had a full and fair opportunity to litigate the Fourth Amendment issues he presented.” Id. at 3. We summarily affirmed, finding that “[t]he merits ... are so clear as to warrant summary action.” 84 F.3d 1452; see also Paolone v. Mueller, No. CIV A. 05-2300 (JBD), 2006 WL 2346448, at *6 (D.D.C. Aug. 11, 2006).
The majority opinion claims that Evan-son is distinguishable because the issue there was “necessary” to the judgment. Maj. Op. at 83. In the majority’s view, Judge Huvelle’s factual finding about the timing of the search was not necessary to resolve the motion to suppress because it was an alternative ruling. But the traditional rule, and the one most courts of appeals follow, is that “an alternative ground' upon which a decision is based should be regarded as ‘necessary’ for purposes of ... res judicata or collateral es-toppel .... ” Winters v. Lavine, 574 F.2d 46, 67 (2d Cir.1978); see also Jean Alexander Cosmetics, Inc. v. L’Oreal USA Inc., 458 F.3d 244, 254 (3d Cir. 2006); Magnus Elecs., Inc. v. La Republica Argentina, 830 F.2d 1396, 1402 (7th Cir. 1987); In re Westgate-California Corp., 642 F.2d 1174, 1176-77 (9th Cir. 1981); Deweese v. Town of Palm Beach, 688 F.2d 731, 734 (11th Cir.1982); Restatement (First) of Judgments § 68 comment n (1942).
The point of the “necessarily decided” prong of the collateral estoppel inquiry is that a finding should have preclusive effect only when the court making it took “sufficient care in determining [the] issue” and when “appellate review is available to ensure the quality of the initial decision.” 18 Chaeles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 4421 (2d ed. 2002). Both of those requirements are met here. Judge Huvelle carefully considered the question — indeed, considered it several times — and her findings against Jones were detailed, well-reasoned, solid and irrefutable. No wonder that Jones decided not to appeal her ruling even though he had several chances. He could have done so either by not pleading guilty or by entering a conditional guilty plea that would have allowed him to appeal Judge Huvelle’s ruling against him. See Fed. R. Crim. P. 11(a)(2). Jones undoubtedly knew this. He had already taken several appeals on other matters, one of which resulted in the Supreme Court reversing his conviction. Jones had a “full and fair opportunity” to litigate and appeal the timing of the search in his suppression motion. Allen, 449 U.S. at 95, 101 S.Ct. 411. It was his choice to plead guilty and cut that opportunity short, just as it was the plaintiffs choice in Evanson not to appeal his conviction.
Jones never argued that Judge Huvelle’s factual finding was not necessary to resolving his motion to suppress. But the majority raises the argument anyway, and then decides with no analysis that alternative holdings do not have preclusive effect. I would not make new law based on arguments that the plaintiff never made, especially if that ruling conflicted with the decisions of other circuits.
Nor is this the only issue on which the majority invokes arguments that Jones never made. The opinion also states that collateral estoppel does not apply because Jones had no incentive to appeal Judge Huvelle’s ruling. Why not? Because even if Jones won on appeal, the remedy “probably would not have been suppression.” Maj. Op. at 82. Notice that this is an assertion about what Jones and his attorney were thinking at the time. And how does the majority gain this insight? Jones never even alleged, let alone argued, in his brief or in his reply brief, that he thought a victory on appeal would not have result *93 ed in suppression[3]. The majority has simply made up this version of Jones’ trial strategy, and has used it as the basis for making new law on an issue that was never presented in this case.
Ironically, even though it makes new law on two issues that Jones never raised, the majority opinion tries to avoid the preclu-sive effect of Judge Huvelle’s factual findings with the astonishing assertion that the defendants have forfeited the argument. Maj. Op. at 82. The assertion is astonishing because the defendants clearly and forcefully made the argument, both here and in the district court. More than that, Jones — in his reply brief — responded to their argument. Here is a sample from the defendants’ brief: “Jones previously litigated ... the timing of the search in his criminal proceeding.... Having already litigated these claims unsuccessfully in the criminal proceeding as part of a motion to suppress, Jones cannot now re-litigate them in a civil proceeding under Bivens or section 1988.” Appellees’ Brief 41. In reply, Jones acknowledged that Judge Huvelle found “that the search occurred within the warrant’s terms. Tr. of Proceedings Held Feb. 19, 2013, ECF 780 at 4.” Jones Reply Brief 24. Jones’ citation is to the very portion of Judge Huvelle’s ruling I quoted above.
Now to the arguments Jones actually made. In attempting to ward off collateral estoppel, Jones’ only claim is that after he pled guilty, he lacked an “adequate incentive to litigate” or appeal those issues. Appellant Reply Br. 25. For that proposition he cites Haring v. Prosise, 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), but the portion of Haring he cites is not a holding. It is instead a summary of the holding of the lower court.[4] 462 U.S. at 311, 103 S.Ct. 2368. (The majority opinion repeats Jones’ mistake. Maj. Op. at 82-83). Additionally, whatever incentive Jones had was obviously enough — he repeatedly litigated. the issue before the district court in the criminal case, even after the court told him to stop. Trial Transcript at 5, No. 1:05-cr-00386-ESH (D.D.C. Aug. 10, 2012), ECF No. 670-5 (“[E]very one of [the motions] I ruled on before. I am not going to reverse myself. They are the law of the case.”); Trial Transcript at 3-4, No. 1:05-cr-00386-ESH (Feb. 19, 2013), ECF *94 No. 780 (“I’ve already ruled five times.... ”).
Jones also seeks to derive this requirement of an “adequate incentive to litigate” from the broader principle that courts should not estop defendants if doing so would “work a basic unfairness.” Martin v. Dep’t of Justice, 488 F.3d 446, 454 (D.C. Cir. 2007). Bringing “fairness” into the mix does not help him. He has already been involved in four criminal trials and several civil complaints, and he has raised this issue multiple times. He has managed' to spin this single, baseless allegation into a large expenditure of judicial and attorney resources. Jones had his day in court, in fact more than a day, and there is nothing unfair in denying him still another.
Jones cites three cases in which he claims criminal defendants were not es-topped in “analogous circumstances” because they lacked adequate incentive to litigate or appeal issues decided in a criminal case. Talarico v. Dunlap, 177 Ill.2d 185, 226 Ill.Dec. 222, 685 N.E.2d 325, 332 (1997); Johnson v. Watkins, 101 F.3d 792, 796 (2d Cir. 1996); United States v. Levasseur, 699 F.Supp. 965, 981 (D. Mass. 1988), rev’d in part on other grounds, 846 F.2d 786 (1st Cir. 1988). The first case did not involve a motion to suppress. Talarico, 177 Ill.2d at 196, 226 Ill.Dec. 222, 685 N.E.2d 325. And in the other two cases, the defendants could not appeal because they had either been acquitted or granted a mistrial, not because they had pled guilty. Johnson, 101 F.3d at 796; Levasseur, 699 F.Supp. at 971; compare Jenkins v. City of New York, 478 F.3d 76, 91-92 (2d Cir. 2007); Sornberger v. City of Knoxville, 434 F.3d 1006, 1020-23 (7th Cir. 2006); Dixon v. Richer, 922 F.2d 1456, 1459 (10th Cir. 1991). That is a crucial difference. When a defendant is acquitted, neither he nor the government can appeal the decision. See Martinez v. Hooker, 601 Fed.Appx. 644, 648-49 (10th Cir. 2015). In contrast, here Jones had the opportunity to go to trial and appeal if he was convicted; he simply decided he would rather plead guilty.
The short of the matter is that the Fourth Amendment issue regarding the timing of the search is not presented in this case and the majority opinion erred in deciding that issue.[5]
*95 Even if Judge Huvelle’s rulings did not preclude Jones from raising the same issues in a civil lawsuit, there is no good reason to decide whether the search in this case violated the Fourth Amendment. I would hold that because the officers did not violate a clearly established right they had qualified immunity from Jones’ suit and be done with it. In Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), the Supreme Court reversed its decision in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), and held that although courts may decide constitutional questions in qualified immunity cases, it is often unwise to expend “scarce judicial resources on difficult questions that have no effect on the outcome....” 555 U.S. at 236-37, 129 S.Ct. 808.
Ever since Pearson, this court has developed not a page, but a volume of history following the Supreme Court’s decision. In these cases, we have almost invariably declined to decide constitutional questions in qualified immunity cases when it was unnecessary to do so. The majority has made no attempt to distinguish the cases embodying our established practice. See Lash v. Lemke, 786 F.3d 1, 5 (D.C. Cir. 2015); Fenwick v. Pudimott, 778 F.3d 133, 137 (D.C. Cir. 2015); Dukore v. District of Columbia, 799 F.3d 1137, 1144 (D.C. Cir. 2015); Fox v. District of Columbia, 794 F.3d 25, 29 (D.C. Cir. 2015); Bamdad v. DEA, 617 Fed.Appx. 7, 8 (D.C. Cir. 2015); Doe v. District of Columbia, 796 F.3d 96, 105 (D.C. Cir. 2015); Mpoy v. Rhee, 758 F.3d 285, 295 (D.C. Cir. 2014); Atherton v. D.C. Office of Mayor, 706 F.3d 512, 515 (D.C. Cir. 2013); Johnson v. District of Columbia, 734 F.3d 1194, 1202 (D.C. Cir. 2013); Taylor v. Reilly, 685 F.3d 1110, 1113 (D.C. Cir. 2012); Bame v. Dillard, 637 F.3d 380, 384 (D.C. Cir. 2011), as amended (Mar. 29, 2011); Jones v. Horne, 634 F.3d 588, 597, 599 (D.C. Cir. 2011); Ali v. Rumsfeld, 649 F.3d 762, 773 (D.C. Cir. 2011); Rasul v. Myers, 563 F.3d 527, 530 (D.C. Cir. 2009). It is no answer to say that this is a matter within the court’s discretion. In the words of Chief Justice Marshall, “This is true. But a motion to [the court’s] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles.” United States v. Burr, 25 F.Cas. 30, 35 (C.C.D. Va. 1807). The nearly uniform practice of this court has established such sound legal principles, and the majority has offered no reason to depart from them.
I repeat that we are deciding this case on a complaint alone. The defendant officers have yet to file their answer to the complaint. As the Supreme Court recognized in Pearson, courts should not proceed to a constitutional question if the answer depends on undeveloped facts. 555 U.S. at 239, 129 S.Ct. 808. Still less should a court decide a constitutional question when developed facts show that the question is not presented. The evidence in the criminal proceedings proved that the search of Jones’ premises eleven years ago complied with the warrant’s timing requirement. Compare Bradley v. Reno, 749 F.3d 553, 558 (6th Cir. 2014) (“[I]n gauging the reasonableness of an officer’s acts, a ... court should of course consider what a ... trial court thought of them.”).
*96 Judge Leval has explained that when a case can easily be 'decided on the “clearly established” prong alone, “neither the judge nor the defendant has any practical interest in the theoretical question of constitutionality. Both know it can have no effect on the inevitable dismissal of the case.” Pierre N. Leval, Judging Under the Constitution: Dicta About Dicta, 81 N.Y.U. L. Rev. 1249, 1278 (2006); see also Pearson, 555 U.S. at 234, 239-40, 129 S.Ct. 808 (discussing Judge Leval’s article). The defendants in this case have won a dismissal on this Fourth Amendment issue; they have no reason to seek rehearing en banc or certiorari in the Supreme Court on that issue. See Lyons v. City of Xenia, 417 F.3d 565, 582 (6th Cir. 2005) (Sutton, J., concurring).[6]
The answer to the constitutional question here is by no means certain[7]. And it is hardly pressing. The majority cites not a single reported case in this jurisdiction in which officers, federal or local, executed a daytime warrant at night. And this is not such a case, in light of Judge Huvelle’s findings and the evidence supporting her findings.
The majority opinion concludes on this note: “Although well-founded doubt about the veracity of a plaintiffs factual allegations might steer us toward constitutional avoidance ... the Defendants have not submitted contrary evidence nor. even filed an answer denying Jones’s allegations.” Maj. Op. at 87.
I am tempted to place an exclamation point, or maybe two or three, at the end of that quotation. Instead I will insert several here: “well-founded doubt,” “not submitted contrary evidence”!!!! Judge Huvelle pointed out — made a factual finding — that the *97 officers, now defendants in Jones case, testified under oath that they entered Jones’ home after 6:00 a.m. and that they were telling the truth. That strikes me as a “well-founded” denial of Jones’ “factual allegations.” All the evidence, the overwhelming evidence, supported Judge Hu-velle’s findings. The defendants testified that Jones’ claim that they entered at 4:45 a.m. was a lie. FBI Agent Naugle, one of the defendants in this civil case, made a contemporaneous entry on the warrant stating that the entry occurred at 6:15 a.m. And the defendants, in their brief in this court, maintained that Judge Huvelle’s findings precluded Jones from claiming to the contrary in his civil suit against the officers who helped put him away. As for not filing an answer, the whole point of qualified immunity is that officers have “immunity from suit rather than a mere defense to liability.” Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Such cases should be resolved “at the earliest possible stage in litigation,” even if that is before defendants file their answer. Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam). “Not submitted contrary evidence,” “well-founded doubt.” Whatever case the majority is writing about, it is not this one.

. Many other courts have come to the same conclusion on state law grounds. See United States ex rel. DiGiangiemo v. Regan, 528 F.2d 1262, 1265 (2d Cir. 1975) (Friendly, J.); Donovan v. Thames, 105 F.3d 291, 298 (6th Cir. 1997); Simmons v. O'Brien, 77 F.3d 1093, 1096-97 (8th Cir. 1996); Ayers v. City of Richmond, 895 F.2d 1267, 1271 (9th Cir. 1990); Rowley v. Morant, 631 Fed.Appx. 651, 654 (10th Cir. 2015); but see Heath v. Cast, 813 F.2d 254, 258 (9th Cir. 1987). See generally Diane M. Allen, Res Judicata or Collateral Estoppel Effect of Prior Criminal Proceedings, 68 A.L.R. Fed. 861 (1984) (collecting cases).

. One might also wonder how the majority can be so sure that suppression would not have resulted if the search actually began before 6 a.m. The majority opinion cites three circuit court decisions holding that executing a daytime warrant at night violated the Fourth Amendment. See Maj. Op. at 86 (citing O’Rourke v. City of Norman, 875 F.2d 1465 (10th Cir. 1989); United States v. Merritt, 293 F.2d 742 (3d Cir. 1961); Yanez-Marquez v. Lynch, 789 F.3d 434 (4th Cir. 2015)). Of these three cases, one — O’Rourke—did not even deal with suppression of evidence; like this case, it was an action for damages. The two other cases recognized that suppression was a proper remedy. In Merritt, the Third Circuit case, the court held that the district court should have suppressed the evidence. In Ya-nez-Marquez the Fourth Circuit held that suppression was available as a remedy if the constitutional violation was "egregious.” 789 F.3d at 467-69. (This was a civil deportation case, not a criminal proceeding, and the Fourth Circuit determined that under INS v. Lopez-Mendoza, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), the exclusionary rule therefore could be invoked only for egregious constitutional transgressions. 789 F.3d at 447-51.). The majority’s decision that suppression is not available in such cases may therefore put us in conflict with the Fourth Circuit.

. The substance of Haring does not help him either. That case held only that criminal defendants are not estopped from contesting issues that they could have, but did not, raise in a motion to suppress during their criminal proceedings. 462 U.S. at 318, 103 S.Ct. 2368. Haring did not address what happens when the defendant does raise the issue in a motion to suppress and the court rules against him.

. I also have doubts about the majority’s analysis of the statute of limitations question. There are twelve defendants in this case. Eleven of them are or were FBI agents. The action against them rests not on a federal statute but, under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), directly on the Fourth Amendment. The majority opinion borrows the limitations period of the District of Columbia. Although the search, and thus the cause of action, arose in Maryland, the majority rejects as "dictum” Justice Scalia’s statement for the Court in Wallace v. Koto, 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007), that in § 1983 actions the limitation statute of the state in which the cause of action arose controls. Maj. Op. at 80.
But there is now an analogous federal limitations statute — 28 U.S.C. § 1658, which provides a four year period without any tolling provision like the District of Columbia's. (Section 1658 applies only by analogy because it governs causes of action under statutes enacted after December 1, 1990.) The Supreme Court has recognized that in the interest of uniformity and in light of the potential multi-state geographic nature of some federal actions, the courts should adopt an analogous federal limitations period rather than a state law, which itself would apply only by analogy. See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 357, 111 S.Ct 2773, 115 L.Ed.2d 321 (1991); 19 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 4519 (2d ed.).
The majority objects that this is not "a valid reason to ignore the clear text of § 1988." Maj. Op. at 94 n.6. But the "clear text” of § 1988 refers to "the common law, as modified and changed by the constitution and statutes of the State” where the court sits. 42 *95 U.S.C. § 1988(a) (emphasis added). It makes no mention of the District of Columbia. The Supreme Court has held that similar — indeed, even broader — language originally in 42 U.S.C. § 1983 did not apply to the District of Columbia. See District of Columbia v. Carter, 409 U.S. 418, 432, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). In response to that case, Congress amended § 1983 to cover the District of Columbia. See Pub. L. No. 96-170, 93 Stat. 1284 (1979). Congress has never made such a change to § 1988.
The problem is that the defendants did not make this argument or anything like it.

. Given our unanimous ruling that the defendants have qualified immunity, we could not send the case back to the district court for still another evidentiary hearing on the timing question, a question that no longer affects the defendants' liability.

. In crossing out the day or night box on the warrant, the issuing magistrate in this case may not have realized that rather than Rule 41(e)(2) & (a)(2), the timing authority for searches in drug cases is 21 U.S.C. §879. In the Fourth Circuit at least, no special showing is needed in a drug case to justify a nighttime search rather than a search during the day. United States v. Rizzi, 434 F.3d 669, 674 (4th Cir. 2006), so holds: "At bottom, we hold that when a-search warrant involves violation of drug crimes, the warrant can be served day or night so long as the warrant itself is supported by probable cause.”
The warrant here was supported by probable cause and so under Rizzi the question is not the simple one about whether a nighttime search pursuant to a daytime warrant violates the Fourth Amendment. The question is rather more involved. One way to frame the question is whether what occurred here was just a ministerial error on the part of the magistrate that the officers could disregard given § 879 (see Judge Friendly’s opinion in Ravich cited below).
I have found no cases directly on point. But there are some analogous federal decisions involving searches pursuant to state court warrants. In these cases the state warrant authorized only a daytime search but the officers executed the warrant at night. United States v. Ravich, 421 F.2d 1196 (2d Cir. 1970) (Friendly, J.), is such a case. Judge Friendly held for the court that the search at night was the equivalent of a harmless error, not a Fourth Amendment violation. Id. at 1202. United States v. "Williams, 570 Fed.Appx. 137 (3d Cir. 2014), is a more recent example. There the state court warrant authorized only a daytime search but the officers executed it at night. Judge Scirica, writing for the court, held that the search did not violate the Fourth Amendment. Id. at 141-42. See also United States v. Keene, 915 F.2d 1164, 1168 (8th Cir. 1990) (relying on §879); Sibiian v. San Ber-nardino County, 526 Fed.Appx. 752, 753 (9th Cir. 2013) (holding that police officers' violation of state law prohibiting execution of search warrants at night did not violate the Fourth Amendment); see generally Claudia G. Catalano, Propriety of Execution of Search Warrant at Nighttime, 41 A.L.R.5th 171 (1996).